524 S.E.2d 666

SUPERVALU OPERATIONS, INC., a Rhode Island corporation d/b/a Supervalu–Milton Division (successor in interest by merger to Fox Grocery Company, a West Virginia corporation, f/k/a Wetterau Food Distribution Group–West Virginia Division), Plaintiff below, Appellee,

v.

CENTER DESIGN, INC., a Georgia corporation;  Parkland Development, Inc., a Georgia corporation;  William A. Abruzzino and Rebecca Abruzzino, Defendants below, Appellants.

No. 26429.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 3, 1999.

Decided Dec. 2, 1999.

Thomas E. Scarr, Esq., Scott D. Maddox, Esq., Jenkins Fenstermaker, PLLC, Huntington, West Virginia, Attorneys for Appellee.

Charles G. Johnson, Esq., Johnson, Simmerman & Broughton, L.C., Clarksburg, West Virginia, Attorney for Appellants.

PER CURIAM:

Appellants and defendants below, Center Designs, Inc., Parkland Development, Inc., William Abruzzino and Rebecca Abruzzino ("Abruzzinos") appeal the entry of summary

judgment by the Circuit Court of Greenbrier County in favor of the appellee and plaintiff below, Supervalu Operations, Inc., d/b/a Supervalu–Milton Division ("Supervalu"). The summary judgment was entered against the Abruzzinos after Supervalu filed a suit to obtain a declaratory judgment interpreting a lease between the Abruzzinos, the lessors of a certain commercial property, and Supervalu,[1] the lessee.

Both Supervalu and the Abruzzinos filed motions for summary judgment. Both parties argued that no questions of material fact remained, and that the matter was mature for judgment. The circuit court entered an order on May 14, 1998 granting summary judgment in favor of Supervalu. The appellants' motion for summary judgment was denied in the same order. The circuit court subsequently entered an order on January 15, 1999 awarding damages to Supervalu.

The Abruzzinos appeal both the entry of summary judgment in favor of the appellee and the judgment order. The appellants argue that the court erroneously applied the rules of construction to the lease in question, and that the court erred in its award of damages. Following our review of this matter we find that the circuit court did not err, and we affirm.

## I.

The facts in this case are substantially undisputed. The Abruzzinos are the owners of a certain piece of commercial real estate located in Greenbrier County, West Virginia. On June 28, 1971, the Abruzzinos entered into a lease with Kroger, a grocery chain, for the commercial property. Pursuant to the lease the Abruzzinos were required to construct a building on the property which was to be used by Kroger as a grocery store. The lease was for 15 years.

Before the lease expired, Kroger decided it required a larger facility and began construction of a new building in 1979, on a separate property. The Abruzzinos were contacted by Marshall Grizzell ("Grizzell"), who operated several Foodland grocery stores, and who was interested in the building that Kroger had been leasing. Grizzell operated stores under a franchise agreement with Fox Grocery Company, which later became Supervalu Operations, Inc.

On February 5, 1980, the Abruzzinos entered into a lease with Fox Grocery Company (now Supervalu). The Abruzzino–Fox lease required that the "Lessor shall repair and maintain only the structural integrity of the demised premises ... [and] Lessee, at its expense, shall perform all other repairs, replacements, maintenance and redecoration of the demised premise[.]"[2] Grizzell began operating a grocery store at the Abruzzinos' property through a sub-lease agreement with Fox Grocery Company.

During the 1980's Grizzell operated a Foodland grocery store and maintained the premises. During the time that Grizzell utilized the leased property, the building developed a leaky roof. Grizzell contacted the Abruzzinos concerning a small leak and the Abruzzinos had a service crew to make minor repairs to the roof. Grizzell, in his deposition, stated that he recalled paying the Abruzzinos for this service, but William Abruzzino, in his deposition, stated that he had the service performed as a favor to Grizzell.

In June of 1991, Grizzell ceased operating the Foodland store. Stephen Meadows ("Meadows") then sub-let with Fox Grocery

---

1. The February 5, 1980 lease was between the appellants and Fox Grocery Company, a West Virginia Corporation. Supervalu Operations, Inc. is a successor in interest of Fox Grocery Company.

2. The lease provided the following:
   14. Lessee may make such nonstructural alterations to the interior of the demised premises as it may desire from time to time at its sole cost and expense.... Lessee shall make no alterations, additions or changes whatsoever to the exterior of the demised premises without first obtaining the prior written consent of the Lessor.
   15. Lessor shall repair and maintain only the structural integrity of the demised premises and only so long as the need for any such structural repair or maintenance does not arise as a result of the Lessee's acts or negligence. Lessee, at its expense, shall perform all other repairs, replacements, maintenance and redecorating of the demised premises, including all repairs to plate glass.

Company to continue the operation of the Foodland store on the property.

On September 13, 1991, Meadows, on behalf of the appellee, contacted the Abruzzinos by letter and requested that several repairs be made to the leased premises, including repair to the flat roof. Meadows testified in his deposition that he believed the condition of the roof represented a potential danger to his customers and merchandise. Upon receipt of the letter, the Abruzzinos denied that the lease required that they repair the roof. Meadows subsequently contacted several contractors about making the roof repairs.

Upon receipt of several contractors' bids, Meadows forwarded the information to the Abruzzinos and advised the Abruzzinos that unless they acted within 30 days, Meadows would select a contractor to do the work and proceed under the lease as if the Abruzzinos were in default.[3] The Abruzzinos took no action, so, in 1993, Meadows selected a contractor to repair the roof. The repair required work on the "roof membrane"[4] of the building. The repairs cost Meadows $31,675.00 for the roof and $600.00 for roof drains.

Following the completion of the repairs, Meadows contacted the Abruzzinos and informed them that he was going to exercise his right to set-off the costs as contemplated by the lease.[5] The Abruzzinos notified Meadows that they did not consider the roof membrane to be part of the "structural integrity" of the building, and that they would consider taking a set-off as a default on the part of the appellee.

The matter went unresolved for some time. Finally, in 1997, Supervalu, the appellee, filed a suit to obtain a declaratory judgment interpreting the February 5, 1980 lease.

Subsequent to the filing of the declaratory judgment action, sometime in 1998, the roof again needed repairs because the 1993 repair work failed. The contractor who had performed the earlier work had filed for bankruptcy, so the appellee sought another contractor to repair the roof. Meadows, as an agent for the appellee, obtained bids for the work and again forwarded the bids to the Abruzzinos requesting that the Abruzzinos choose a contractor to perform the repair work. The Abruzzinos again declined to repair the roof.

In the declaratory judgment action filed by appellee, both parties waived their right to a jury trial, and both parties filed motions for summary judgment. Upon a review of the briefs and the record before it, the circuit court found in favor of the appellee Supervalu, and by order dated May 14, 1998, held that the lease required the Abruzzinos to repair the roof. On January 15, 1999, the circuit court entered a second order "for clarification of its May 14, 1998 order," holding that the Abruzzinos were liable for "$32,275.00, plus interest .... [and] all future repairs of the roof during the life of the lease[.]" It is from these orders that the Abruzzinos appeal.

The Abruzzinos, on appeal, now argue that genuine issues of material fact remain and that the circuit court erred in granting summary judgment to Supervalu. The Abruzzinos also argue that the circuit court erred in its construction of the contract, and in re-

---

**3.** The lease provided the following:
*Default by Lessor:* 24. Lessee shall give Lessor written notice of any default by Lessor in the performance of any covenant or obligation to be kept or performed hereunder, and if such default continued for a period of thirty (30) days after receipt by Lessor of the written notice from Lessee specifying such default, then and in such event, Lessee at its election may declare this Lease terminated and void and vacate demised premises within an additional period of thirty (30) days, paying rent only to the date of said vacating; provided, nevertheless, that if Lessor in good faith has made efforts to correct such default within such initial thirty (30) days period but due to

the nature of the cure of such default Lessor has been unable to complete such cure, Lessee shall not declare this Lease terminated so long as Lessor continue in good faith toward such cure provided, nevertheless, that is such default by Lessor can be cured by the payment of money, Fox, at its election, may spend such money as is reasonable necessary to cure.

**4.** A roof is comprised of three basic elements: a steel frame or web of bar joists, metal decking and the exterior fabric of the roof or "roof membrane."

**5.** *See supra* note 3.

quiring the Abruzzinos to pay for all past and future repairs to the roof.

## II.

■ This case was decided below on motions for summary judgment filed by both parties, each informing the court that there existed no genuine issues of fact. In cases of summary judgment, we are guided by *W.Va. R.C.P.* 56 and the related case law concerning motions for summary judgment. Our standard of review is well established that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syllabus Point 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994).

■ "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963). We have also stated:

> Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syllabus Point 2, *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995).

■ The Abruzzinos argue that the circuit court erred in granting summary judgment to the appellee because genuine issues of fact remained to be tried. However, the Abruzzinos, in their motion for summary judgment submitted to the circuit court, argued there were no genuine issues remaining and that the matter was ripe for judgment. The Abruzzinos' brief in support of their motion for summary judgment also argued that the relevant language in the lease was clear and unambiguous and no additional evidence needed to be taken to clarify the issues. However, upon receiving an adverse ruling in the circuit court, the Abruzzinos now assert on appeal that there exist genuine issues of fact to be tried. The Abruzzinos admit that they have switched their earlier position, but argue that no genuine issues of fact would exist if the circuit court had interpreted the lease according to their theory of the case.

The Abruzzinos now contend that the circuit court misapplied the rules of construction in interpreting the lease provisions and assert that the term "structural integrity" is ambiguous requiring the examination of the parties' intent in drafting the document.

■ We have stated that "[t]he mere fact that parties do not agree to the construction of a contract does not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court." Syllabus Point 1, *Berkeley County Public Service District, etc. v. Vitro Corporation of America,* 152 W.Va. 252, 162 S.E.2d 189 (1968). We hold to the general principle that:

> Contract language usually is considered ambiguous where an agreement's terms are inconsistent on their fact or where the phraseology can support reasonable differences of opinion as to the meaning of the words employed and obligation undertaken.

*Fraternal Order of Police v. Fairmont,* 196 W.Va. 97, 101, 468 S.E.2d 712, 716 (1996).

■ If the contract language is found to be unambiguous then "[i]t is the safest and best mode of construction to give words, free from ambiguity, their plain and ordinary meaning." Syllabus Point 3, *Bennett v. Dove,* 166 W.Va. 772, 277 S.E.2d 617 (1981).

The Abruzzinos argue that the language in the contract is ambiguous with regard to the term "structural integrity" and the court therefore erred in granting summary judgment in favor of the appellee.

■ To aid in the construction of a contract, we have held:

> Extrinsic evidence may be used to aid in the construction of a contract if the matter in controversy is not clearly expressed in the contract, and in such case the intention of the parties is always important and the court may consider parol evidence in connection therewith with regard to conditions

and objections relative to the matters involved. However, where the language of a contract is clear the language cannot be construed and must be given effect and no interpretation thereof is permissible.

Syllabus Point 2, *Berkeley County Public Service District, etc. v. Vitro Corporation of America,* 152 W.Va. 252, 162 S.E.2d 189 (1968).

The Abruzzinos assert to this Court that the term "structural integrity" is subject to different interpretations, and that a non-load-bearing roof membrane should not be considered part of the structural integrity. Because of this alleged ambiguity the Abruzzinos now argue that the court should have considered extrinsic evidence and that the intent of the parties should control.

We note that the lease provided that the "Lessee may make ... nonstructural additions to the interior of the demised premises .... [but] Lessee shall make no alterations, additions or changes whatsoever to the exterior of the demised premises without first obtaining the prior written consent of the Lessor." [6] The lease further provides that the "Lessor shall repair and maintain only the structural integrity of the demised premises[.]" [7] The lease, in essence, prohibits the lessee from making any changes to the exterior of the building, but does permit making non-structural changes to the interior. The lease further places the responsibility for structural integrity on the lessor. Common sense dictates that the roof of a building contributes substantially to its structural integrity.

It is clear that the lease requires the Abruzzinos to maintain the soundness of the roof as part of the structural integrity of the building. We find, therefore, that the circuit court did not err in granting summary judgment in favor of the appellee.

■ We next turn to the issue of damages. The Abruzzinos argue that they should not be held responsible for the repairs of the roof.

■ Regarding damages for a breach of a contract we have held:

Compensatory damages recoverable by an injured party incurred through the breach of a contractual obligation are those as may fairly and reasonably be considered as arising naturally—that is, according to the usual course of things—from the breach of the contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of its breach.

Syllabus Point 2, *Kentucky Fried Chicken of Morgantown, Inc. v. Sellaro,* 158 W.Va. 708, 214 S.E.2d 823 (1975).

■ The Abruzzinos admitted in deposition that the work performed on the roof was reasonable and necessary. The circuit court determined that the repair costs assumed by the appellee were necessary to maintain the structural integrity of the building. The circuit court also determined that the appellants were to be liable for all past and future repairs to the building during the life of the lease. For direct damages "there is no requirement that the parties must have actually anticipated them because they are a natural consequence of the breach." Syllabus Point 2, in part, *Desco Corp. v. Harry W. Trushel Const.,* 186 W.Va. 430, 413 S.E.2d 85 (1991).

We find that the roof repairs were directly related to and necessitated by the Abruzzinos' breach of the lease. We therefore find that the circuit court did not err in ordering the Abruzzinos to reimburse the appellee and further requiring that the Abruzzinos undertake all future repairs of the roof.

### III.

In conclusion, we find that the circuit court did not err in granting summary judgment and in awarding damages to the appellee, Supervalu Operations, Inc.

Affirmed.

Judge GARY JOHNSON, sitting by special assignment.

---

**6.** *See supra* note 2.

**7.** *See supra* note 2.

Justice SCOTT did not participate in the decision of the Court.