677 S.E.2d 914

**DAN'S CARWORLD, LLC d/b/a/ Dan Cava's Toyota World, Plaintiff Below, Appellee,**

v.

**David SERIAN, Defendant Below, Appellant.**

No. 34146.

Supreme Court of Appeals of West Virginia.

Submitted March 10, 2009.

Decided May 13, 2009.

Julie Gower Romain, Fairmont, WV, for the Appellant.

Gregory H. Schillace, Schillace Law Office, Clarksburg, WV, for the Appellee.

DAVIS, Justice:

This is an appeal by David Serian, defendant below (hereinafter referred to as "Mr. Serian"), the purchaser of a motor vehicle, from two rulings granting summary judgment in favor of Dan's Carworld, plaintiff below and appellee herein, the seller of the vehicle. One issue in this case is whether Mr. Serian is obligated to reimburse Dan's Carworld for its payment of the balance due on a loan secured by a vehicle offered by Mr. Serian in trade for the new vehicle he purchased. Pursuant to the plain language of the motor vehicle purchase agreement, we find Mr. Serian is obligated to reimburse Dan's Carworld and affirm the lower court's grant of summary judgment with respect to

this issue. A second issue is whether the circuit court erred in granting summary judgement to Dan's Carworld with regard to Mr. Serian's counterclaims. The circuit court's ruling was based upon its determination that the aforementioned amount owed by Mr. Serian did not constitute a "claim" as that term is defined in W. Va.Code § 46A-2-122(b) (1996) (Repl. Vol. 2006). We find that the amounts owed by Mr. Serian fall within the definition of the term "claim," and therefore reverse the grant of summary judgment as to Mr. Serian's counterclaims.

I.

## FACTUAL AND PROCEDURAL HISTORY

In March 2006, Mr. Serian purchased a 2006 Toyota Tacoma truck from Dan's Carworld. Mr. Serian contends that, prior to his purchase, he was solicited by phone on several occasions by a salesman of Dan's Carworld encouraging him to purchase a new 2006 Toyota truck. At that time, Mr. Serian and his wife owned two Toyota trucks.[1] Both trucks were subject to liens held by Wachovia Bank. The salesman allegedly encouraged Mr. Serian to purchase the new Toyota truck to replace his 2002 truck. When asked how much he owed on the 2002 truck, Mr. Serian purportedly replied that he owed "a couple thousand dollars." Mr. Serian claims that he ultimately agreed to trade his 2002 truck toward the purchase of the 2006 truck, but only if the payment on the new loan for the 2006 truck would not exceed the amount he currently paid each month on his existing motor vehicle loan for the 2002 truck.

The transaction was completed on March 23, 2006. The new motor vehicle purchase agreement and loan agreement were both prepared by an employee of Dan's Carworld. Mr. Serian signed both agreements, and both agreements indicated that the balance due on his loan for the 2002 truck was $2,320.09. On the back of the motor vehicle purchase agreement was the following clause:

7. BALANCE OWED ON TRADE-IN

---

1. Specifically, the Serians owned a 1997 Toyota truck, and a 2002 Toyota truck.

If the Purchaser is delivering a trade-in vehicle or is turning in a leased vehicle as part of the transaction and the actual amount of the balance owed on the trade-in vehicle/lease turn-in is different than the amount of the balance owed as listed in this Agreement, the Purchaser agrees to pay the difference to the Dealer if the actual amount of the balance owed is greater than the amount listed and, if the actual amount of the balance owed is less than the amount listed, the Dealer agrees to pay the difference to the Purchaser.

When preparing the purchase agreement and finance agreement forms, the Dan's Carworld employee contacted Wachovia Bank to ascertain the payoff amount for the 2002 truck being traded in connection with Mr. Serian's purchase of the 2006 truck. The employee, using Mr. Serian's social security number, was given the payoff amounts for both of Mr. Serian's motor vehicle loans with Wachovia. The payoff on one loan was $4,357.87, and the other was $2,320.09. The employee used the lower figure, $2,320.09, on the purchase agreement and finance agreement forms. Mr. Serian signed, without modification, the purchase agreement and finance agreement forms as prepared by Dan's Carworld.

The amount of $2,320.09 was actually the payoff amount for Mr. Serian's 1997 truck. The figure of $4,357.87 represented the payoff for his 2002 truck. Mr. Serian asserts that the Dan's Carworld employee completing the forms failed to use the truck's Vehicle Identification Number (hereinafter referred to as "VIN") to determine which loan was secured by the 2002 truck. Mr. Serian further avers that Dan's Carworld intentionally selected the lower loan amount to meet his requirement that his monthly motor vehicle loan payment not increase. Otherwise, claims Mr. Serian, he would not have agreed to purchase the 2006 truck. Dan's Carworld states that it obtained the loan information using Wachovia's automated phone system which does not provide loan information based upon a VIN. Furthermore, Dan's Carworld contends that its employee selected the lower figured based upon Mr. Serian's

representation that he owed approximately $2,000.00 on the 2002 truck.

On March 23, 2006, Dan's Carworld forwarded to Wachovia Bank a check in the amount of $2,320.09 to pay off the loan on the 2002 truck. On March 28, 2006, Dan's Carworld received correspondence from Wachovia Bank stating that the actual payoff on the 2002 truck was $4,357.87, leaving a balance due of $2,037.78 on that vehicle. The 2002 truck had already been sold to a third party. Therefore, Dan's Carworld paid to Wachovia the $2,037.78 due on the vehicle and endeavored to collect the same from Mr. Serian pursuant to the terms of the Motor Vehicle Purchase Agreement. Mr. Serian claims that both Dan Cava, owner of Dan's Carworld, and one of its salesmen contacted him to collect the $2,037.78 that had been tendered by Dan's Carworld to Wachovia in payment of the loan on the 2002 truck. Mr. Serian refused to pay the amount and demanded the return of his trade-in vehicle. Because the 2002 truck had already been sold, Dan's Carworld refused to return the same. Mr. Serian alleges that the calls thereafter became "heated" with Mr. Cava cursing at him and threatening to ruin his credit rating. Thereafter, Dan's Carworld, through its counsel, sent correspondence to Mr. Serian demanding payment.

Dan's Carworld filed the instant action asserting unjust enrichment by Mr. Serian in connection with the above-described vehicle transaction. Mr. Serian then filed counterclaims against Dan's Carworld asserting violations of the West Virginia Consumer Credit and Protection Act (hereinafter referred to as "the CCPA"), and fraud, on the basis that Dan's Carworld was attempting to collect a debt arising out of a consumer transaction.

Both parties moved for summary judgment. The circuit court, by "Final Judgment Order" entered October 19, 2007, granted summary judgment in favor of Dan's Carworld on all issues. With respect to Mr. Serian's claims under the CCPA, the circuit court concluded that

these statutory sections [are] inapplicable to the above-styled action as [Dan's Carworld] was not attempting to collect a claim or debt as defined and contemplated

by the West Virginia Consumer Credit and Protection Act. [Dan's Carworld] sought to recover amounts it paid to get a clear title to the vehicle traded by [Mr. Serian] to the [Dan's Carworld].

The circuit court went on to conclude that "[a]s this transaction involves the purchase of the 2002 Toyota Tacoma by [Dan's Carworld,] it does not involve a claim as contemplated by West Virginia Code § 46A-2-122(b). The amount owed is to satisfy the lien on personal property purchased by [Dan's Carworld] from [Mr. Serian]." This appeal followed.

## II.

## STANDARD OF REVIEW

■ In the instant case, this Court is asked to review the summary judgment rulings of the circuit court. It is well established that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syl. pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). Furthermore, "[w]hen undertaking our plenary review, we apply the same standard for granting summary judgment as would be applied by a circuit court." *Subcarrier Communications, Inc. v. Nield,* 218 W.Va. 292, 296, 624 S.E.2d 729, 733 (2005). In this respect, we have recognized that

" '[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon,* 187 W.Va. 706, 421 S.E.2d 247 (1992).

Syl. pt. 2, *Painter,* 192 W.Va. 189, 451 S.E.2d 755. Furthermore, "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syl. pt. 3, *id.* Having reviewed the appropriate standards for our review of the instant

case, we will now discuss the particular issues raised.

## III.

## DISCUSSION

The circuit court granted summary judgment to Dan's Carworld on all claims in this case, both the initial claim asserted by Dan's Carworld, and the counterclaims asserted by Mr. Serian. In resolving this case, we will first address the lower court's summary judgment ruling as to the claim asserted by Dan's Carworld. We will separately address the summary judgment order as it pertains to Mr. Serian's counterclaims.

### A. Summary Judgment as to the Claim Asserted by Dan's Carworld

■ In its motion for summary judgment, Dan's Carworld argued that it was entitled to summary judgment as its claim was resolved by the plain language of the purchase agreement entered between it and Mr. Serian. The circuit court agreed and granted summary judgment to Dan's Carworld. We find no error in this ruling by the circuit court.

■ Notably, "[t]he question as to whether a contract is ambiguous is a question of law to be determined by the court." Syl. pt. 1, in part, *Berkeley County Pub. Serv. Dist. v. Vitro Corp. of Am.,* 152 W.Va. 252, 162 S.E.2d 189 (1968). Furthermore, it is well established that

"[i]t is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them." Syllabus Point 3, *Cotiga Development Co. v. United Fuel Gas Co.,* 147 W.Va. 484, 128 S.E.2d 626 (1962).

Syl. pt. 1, *Hatfield v. Health Mgmt. Assocs. of West Virginia,* 223 W.Va. 259, 672 S.E.2d 395 (2008) (per curiam). In other words,

"[a] valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." [Syl. pt. 1,] *Cotiga Devel-*

*opment Co. v. United Fuel Gas Co.*, 147 W.Va. 484, 128 S.E.2d 626 (1962).

Syl. pt. 1, *Bennett v. Dove*, 166 W.Va. 772, 277 S.E.2d 617 (1981). *See also* Syl. pt. 3, *Waddy v. Riggleman*, 216 W.Va. 250, 606 S.E.2d 222 (2004) ("Where the terms of a contract are clear and unambiguous, they must be applied and not construed." (quotations and citations omitted)); Syl. pt. 4, *Capitol Chrysler–Plymouth, Inc. v. Megginson*, 207 W.Va. 325, 532 S.E.2d 43 (2000) (per curiam) (" 'When a written contract is clear and unambiguous its meaning and legal effect must be determined solely from its contents and it will be given full force and effect according to its plain terms and provisions. Extrinsic evidence of the parties to such contract, or of other persons, as to its meaning and effect will not be considered.' Syllabus point 3, *Kanawha Banking and Trust Company v. Gilbert*, 131 W.Va. 88, 46 S.E.2d 225 (1947).").

This Court has further explained that, "[i]f the contract language is found to be unambiguous[,] then '[i]t is the safest and best mode of construction to give words, free from ambiguity, their plain and ordinary meaning' " *Supervalu Operations, Inc. v. Center Design, Inc.*, 206 W.Va. 311, 315, 524 S.E.2d 666, 670 (1999) (per curiam) (quoting Syl. pt. 3, *Bennett v. Dove*, 166 W.Va. 772, 277 S.E.2d 617).

■ The contract provision at issue states:

7. BALANCE OWED ON TRADE–IN

If the Purchaser is delivering a trade-in vehicle or is turning in a leased vehicle as part of the transaction and the actual amount of the balance owed on the trade-in vehicle/lease turn-in is different than the amount of the balance owed as listed in this Agreement, the Purchaser agrees to pay the difference to the Dealer if the actual amount of the balance owed is greater than the amount listed and, if the actual amount of the balance owed is less than the amount listed, the Dealer agrees to pay the difference to the Purchaser.

We agree with the circuit court's conclusion that this contract language is unambiguous. Because the balance owed by Mr. Serian on the 2002 truck was actually greater than the amount listed in the contract, Mr. Serian is obligated to pay the difference to Dan's Carworld.[2] The circuit court's grant of summary judgment in favor of Dan's Carworld on this issue is, therefore, affirmed.

### B. Summary Judgment as to Mr. Serian's Counterclaims

■ The circuit court also granted summary judgment to Dan's Carworld with respect to Mr. Serian's counterclaims, in which he asserted that Dan's Carworld had violated the CCPA, codified in Chapter 46A of the West Virginia Code. The circuit court's decision that the CCPA did not apply to Mr. Serian's counterclaims was based upon its determination that the transaction at issue was not a "claim" as that term is defined in W. Va.Code § 46A–2–122(b). In this respect, the circuit court observed that,

West Virginia Code § 46A–2–122(b) defines "a claim" as

any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or service which is the subject of the transaction is primarily for personal, family or household purposes, whether or not such obligation has been reduced to judgment.

The circuit court went on to compare this provision to a nearly identical provision in the federal Fair Debt Collection Act. *See* 15 U.S.C. § 1692a(5) (1986) (2006 ed.) (defining

2. Mr. Serian argues that the contract utilized by Dan's Carworld is unenforceable as it violates the federal Truth in Lending Act, codified at 15 U.S.C. § 1601, *et seq.* Insofar as this issue was not addressed in the first instance by the trial court, it is not proper for our appellate review. *See State ex rel. Clark v. Blue Cross Blue Shield of West Virginia, Inc.*, 203 W.Va. 690, 699, 510 S.E.2d 764, 773 (1998) ("Typically, we have steadfastly held to the rule that we will not address a nonjurisdictional issue that has not been determined by the lower court."); Syl. pt. 2, *Duquesne Light Co. v. State Tax Dep't*, 174 W.Va. 506, 327 S.E.2d 683 (1984) ("This Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance." (quotations and citation omitted)). Accordingly, we decline to address this issue.

the term "debt"). The circuit court then explained that

> [u]nder the federal act the threshold requirement to assert a claim is the determination that the debt arose out of a transaction, in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes. *Gary v. Goldman and Company*, 180 F.Supp.2d 668 (E.D.Pa.2002).

Finally, the lower court concluded that

> [a]s this transaction involves the purchase of the 2002 Toyota Tacoma by the plaintiff [Dan's Carworld] it does not involve a claim as contemplated by West Virginia Code § 46A–2–122(b). The amount owed is to satisfy the lien on personal property purchased by the plaintiff [Dan's Carworld] from the defendant [Mr. Serian].
>
> Accordingly, the Court FINDS that as the amounts owed by the defendant [Mr. Serian] to the plaintiff [Dan's Carworld] do not constitute a "claim" as defined by West Virginia Code § 46A–2–122(b), therefore, the plaintiff is entitled to a judgment as a matter of law in its favor with respect to the defendant's counterclaim.

Mr. Serian argues that the circuit court improperly determined that the amounts he owed to Dan's Carworld did not constitute a "claim" as defined by W. Va.Code § 46A–2–122(b). In this regard, Mr. Serian maintains that the 2006 truck was purchased for his personal or household purposes. Because the amount owed on the 2002 truck was part of this transaction, Mr. Serian contends, the CCPA applies to Dan's Carworld's collection efforts.

Dan's Carworld responds that it was not attempting to collect a claim as defined in the CCPA; rather, it was seeking reimbursement of amounts it paid on behalf of Mr. Serian to satisfy the lien on the 2002 truck sold by him to Dan's Carworld. Because the transaction at issue here is Dan's Carworld's purchase of the 2002 truck from Mr. Serian, Dan's Carworld contends, the transaction was not primarily for personal, family or household purposes and does not fall within the CCPA.

Our resolution of this issue requires us to examine W. Va.Code § 46A–2–122(b), while bearing in mind that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). It is important to note that, if the legislative intent is clearly expressed in the statute, this Court is not at liberty to construe the statutory provision, but is obligated to apply its plain language. This Court recently summarized our established law on this point in this manner,

> [i]n deciding the meaning of a statutory provision, "[w]e look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *Appalachian Power Co. v. State Tax Dep't*, 195 W.Va. 573, 587, 466 S.E.2d 424, 438 (1995). *See also* Syl. pt. 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970) ("[w]here the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation."); Syl. pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951) ("[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.").
>
> Indeed, this Court has held that "[a] statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." *Sizemore v. State Farm Gen. Ins. Co.*, 202 W.Va. 591, 596, 505 S.E.2d 654, 659 (1998) (internal quotations and citation omitted).

*Davis Mem'l Hosp. v. West Virginia State Tax Comm'r*, 222 W.Va. 677, 682–83, 671 S.E.2d 682, 687–88 (2008). *See also DeVane v. Kennedy*, 205 W.Va. 519, 529, 519 S.E.2d 622, 632 (1999) ("Where the language of a statutory provision is plain, its terms should be applied as written and not construed."

(citations omitted)); Syl. pt. 5, *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W.Va. 137, 107 S.E.2d 353 (1959) ("When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute.").[3]

The provision at issue in this case, W. Va.Code § 46A–2–122(b), states,

"[c]laim" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or service which is the subject of the transaction is primarily for personal, family or household purposes, whether or not such obligation has been reduced to judgment.

We find the language of W. Va.Code § 46A–2–122(b) to be clear, and such language plainly expresses the definition of a "claim."

The circuit court ruled that the transaction at issue did not meet the definition of "claim" found in W. Va.Code § 46A–2–122(b) because the transaction was not primarily for personal, family or household purposes. In reaching this conclusion, the lower court characterized the transaction as a purchase by Dan's Carworld of a vehicle sold to it by Mr. Serian. Because Dan's Carworld was not purchasing the vehicle primarily for personal, family or household purposes, the circuit court concluded that Mr. Serian's obligation did not amount to a "claim." This characterization is erroneous.

The purchase at the heart of the transaction between Mr. Serian and Dan's Carworld was Mr. Serian's purchase of the 2006 Toyota truck from Dan's Carworld. Indeed, the contractual document giving rise to Mr. Serian's obligation to pay to Dan's Carworld the amount remaining due on the loan for his 2002 trade-in vehicle was the motor vehicle purchase agreement for the 2006 truck Mr. Serian purchased from Dan's Carworld. Even the particular contractual paragraph

specifying Mr. Serian's obligation to pay any difference in the lien amount on the 2002 truck acknowledged that the trade-in was but a part of the transaction for Mr. Serian's purchase of the 2006 truck: "[i]f the Purchaser is delivering a trade-in vehicle or is turning in a leased vehicle *as part of the transaction....*" Thus, the "subject of the transaction," for purposes of W. Va.Code § 46A–2–122(b), was the 2006 Toyota truck being purchased by Mr. Serian. The 2002 truck was tendered as partial payment for the 2006 truck, and was an integral part of the transaction involving the 2006 truck. Without Mr. Serian's purchase of the 2006 truck, there would have been no trade in of the 2002 truck. Consequently, because the 2002 truck was offered in trade, its purchase by Dan's Carworld is not properly viewed as a separate transaction, but rather, it is an inextricable part of the purchase of the vehicle for which it was traded, *i.e.* the transaction for the purchase of the 2006 truck. Under this interpretation, because it is undisputed that Mr Serian's purchase of the 2006 truck was for his personal use, the transaction qualifies as a claim under W. Va.Code § 46A–2–122(b), and is governed by the CCPA.

■ Based upon the foregoing discussion, we now hold that when a consumer purchases a motor vehicle from a dealership, and the dealership accepts the trade in of another motor vehicle as payment, or partial payment, of the purchase price of the vehicle being purchased, subsequent efforts by the dealership to collect from the consumer any amounts due the dealership by virtue of the dealership's payment of the loan secured by the trade-in vehicle must comply with the West Virginia Consumer Credit and Protection Act, codified in Chapter 46A of the West Virginia Code. Applying this holding, Mr. Serian is entitled to go forward with his claims that Dan's Carworld violated the CCPA. Therefore, we reverse the circuit court's grant of summary judgment in favor

---

3. However, where the language of a statute does not clearly express its legislative intent, it must be construed before it can be applied. *See* Syl. pt. 1, *Farley v. Buckalew,* 186 W.Va. 693, 414 S.E.2d 454 (1992) ("A statute that is ambiguous must be construed before it can be applied.");

Syl. pt. 1, *Ohio County Comm'n v. Manchin,* 171 W.Va. 552, 301 S.E.2d 183 (1983) ("Judicial interpretation of a statute is warranted only if the statute is ambiguous and the initial step in such interpretative inquiry is to ascertain the legislative intent.").

of Dan's Carworld with respect to Mr. Serian's counterclaims, and remand this case for further proceedings regarding those claims.

## IV.

## CONCLUSION

For the reasons explained in the body of this opinion, this case is affirmed in part, reversed in part, and remanded.

Affirmed in Part, Reversed in Part, and Remanded.