**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**
**February 14, 2018**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**CHEVRON U.S.A., INC.,**
**Defendant Below, Petitioner,**

**vs.) No. 16-1213 (Marshall County Civil Action No. 16-C-153)**

**JOHN ROBERT BONAR AND JOHN & WERNER LAW OFFICES, PLLC,**
**Plaintiffs Below, Respondents.**

**MEMORANDUM DECISION**

Petitioner, defendant below, Chevron U.S.A., Inc. ("Chevron"), by counsel J. Nicholas Ranjan, appeals a circuit court order denying Chevron's motion to compel arbitration, arguing that the circuit court erred in finding Chevron had waived its right to enforce the subject arbitration agreement. Respondents, John Robert Bonar and John & Werner Law Offices, PLLC ("Lessors"), by counsel Anthony I. Werner and Joseph J. John, filed a timely response.

This Court has considered the parties' briefs, the appendix record designated for our review, the pertinent authorities, and oral argument. Upon our scrutiny thereof under the appropriate standard of review, the Court finds that the Circuit Court of Marshall County erred, as a matter of law, by concluding that Chevron, by virtue of its pre-litigation conduct, waived its contractual right to compel arbitration. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion.

Chevron and Lessors are current parties to an oil and gas lease ("the Lease") that was originally executed in August 2010. The original lease was executed between Grace Bonar and her son, John Robert Bonar, as lessors, and TriEnergy Holdings, LLC ("TriEnergy"), as lessee. Grace Bonar ultimately transferred her rights under the lease to John Robert Bonar. John & Werner Law Offices, PLLC, acquired some of the royalty rights under the lease from John Robert Bonar. Chevron became the successor-in-interest to all of TriEnergy's rights and obligations under the Lease.

In March 2016, Chevron began deducting certain costs from the royalty payments it made to Lessors. According to Lessors, neither Chevron nor its predecessors had deducted

costs from their royalty payments prior to March 2016. Lessors contend that the deduction of costs is expressly prohibited by the terms of the Lease. Chevron disagrees.

Pertinent to the instant appeal, the Lease contains the following arbitration clause:

(17) ARBITRATION – Any question concerning this lease or performance thereunder shall be ascertained and determined by three disinterested arbitrators, one thereof to be appointed by the Lessor, one by the Lessee[,] and the third by the two so appointed as aforesaid, and the award of such three persons shall be final and conclusive. The cost of such arbitration will be borne equally by the parties.

Notwithstanding the arbitration clause, in August 2016, Lessors filed a declaratory judgment action in the Circuit Court of Marshall County seeking a judicial determination that Chevron had no right to deduct costs from Lessors' royalty payments, and additionally seeking reimbursement with interest of costs that previously had been deducted by Chevron. Chevron responded to the action with a motion to compel arbitration, in which Chevron also sought dismissal of the case. Lessors filed a memorandum in opposition to Chevron's motion, wherein they argued that the arbitration clause was unconscionable and, therefore, unenforceable.[1]

At a hearing before the circuit court, Lessors presented the argument that Chevron had waived its right to compel arbitration through its pre-litigation conduct, *i.e.*, by unilaterally deciding the "question" of whether certain costs could be deducted from royalties without submitting the question to arbitration pursuant to the broadly-worded arbitration clause. The circuit court agreed and, by order entered December 11, 2016, denied Chevron's motion to compel arbitration. In doing so, the circuit court expressly found that Chevron, "by its pre-litigation conduct in unilaterally commencing certain cost deductions from [Lessors'] royalties without first seeking through arbitration the authority to do so[,] has waived any contractual right to compel [Lessors] into arbitration of the question of costs." It is from this adverse ruling that Chevron appeals.

It has been established that "[a]n order denying a motion to compel arbitration is an interlocutory ruling [that] is subject to immediate appeal under the collateral order doctrine."

---

[1]Lessors' assertion of unconscionability was "based on the fact that the costs of the arbitration can be expected to reach or exceed $40,000.00[,] whereas the amount in controversy, the official value of the stakes in the disputes [as] specified in the *Complaint*[,] [is] $2,266.00." Chevron asserted that the amount in dispute was significantly higher insofar as Lessors also sought a declaration that future deductions could not be made.

Syl. pt. 1, *Credit Acceptance Corp. v. Front*, 231 W. Va. 518, 745 S.E.2d 556 (2013). Moreover, our review of this matter is *de novo*. *See* Syl. pt. 1, *West Virginia CVS Pharmacy, LLC v. McDowell Pharmacy, Inc.*, 238 W. Va. 465, 796 S.E.2d 574 (2017) ("When an appeal from an order denying a motion to dismiss and to compel arbitration is properly before this Court, our review is *de novo*."); *Finch v. Inspectech, LLC*, 229 W. Va. 147, 153, 727 S.E.2d 823, 829 (2012) ("'[W]e apply a *de novo* standard of review to [a] circuit court's interpretation of [a] contract.'" (quoting *Zimmerer v. Romano*, 223 W. Va. 769, 777, 679 S.E.2d 601, 609 (2009) (per curiam))).

Chevron contends that the circuit court erred, and assigned too broad a meaning to the term "question" as used in the arbitration clause, when it ruled that Chevron's pre-litigation conduct of deducting certain costs from royalty payments made to Lessors without first seeking authority to do so through arbitration was sufficient to waive its contractual right to compel arbitration.[2] Lessors argue in support of the circuit court's ruling.

With respect to waiver of the right to compel arbitration, this Court has held that

> [t]he right to arbitration, like any other contract right, can be waived. To establish waiver of a contractual right to arbitrate, the party asserting waiver must show that the waiving party knew of the right to arbitrate and either expressly waived the right, or, based on the totality of the circumstances, acted inconsistently with the right to arbitrate through acts or language. There is no requirement that the party asserting waiver show prejudice or detrimental reliance.

Syl. pt. 6, *Parsons v. Halliburton Energy Servs., Inc.*, 237 W. Va. 138, 785 S.E.2d 844 (2016). This case turns on whether Chevron acted inconsistently with its right to arbitrate. The answer to this query requires consideration of the language utilized in the subject arbitration clause requiring that "[*a*]*ny question* concerning this lease or performance thereunder shall be ascertained and determined by three disinterested arbitrators[.]" (Emphasis added).

---

[2]Chevron additionally argues that waiver is a procedural matter for the arbitrator, not the court; therefore, the circuit court erred by ruling on the issue. We disagree. This Court has expressly held that "[i]n the absence of an agreement to the contrary, waiver of a contractual right to arbitration is a threshold question of enforceability to be determined by a court, not an arbitrator." Syl. pt. 4, *Williams v. Tucker*, 239 W. Va. 395, 801 S.E.2d 273 (2017). Chevron has failed to direct this Court to a delegation clause or other clause in the Lease assigning the waiver issue to arbitration.

In considering the foregoing contractual provision, we are mindful that "[n]othing in the Federal Arbitration Act, 9 U.S.C. § 2, overrides normal rules of contract interpretation. Generally applicable contract defenses—such as laches, estoppel, waiver, fraud, duress, or unconscionability—may be applied to invalidate an arbitration agreement." Syl. pt. 9, *Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011), *reversed on other grounds by Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 132 S. Ct. 1201, 182 L. Ed. 2d 42 (2012) (hereinafter "*Brown I*"). We also recognize that

> "'[a] valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent.' [Syl. pt. 1,] *Cotiga Development Co. v. United Fuel Gas Co.*, 147 W. Va. 484, 128 S.E.2d 626 (1962)." Syl. pt. 1, *Bennett v. Dove*, 166 W. Va. 772, 277 S.E.2d 617 (1981).

*Dan's Carworld, LLC v. Serian*, 223 W. Va. 478, 482-83, 677 S.E.2d 914, 918-19 (2009). Moreover,

> "[i]f the contract language is found to be unambiguous[,] then '[i]t is the safest and best mode of construction to give words, free from ambiguity, their plain and ordinary meaning'" *Supervalu Operations, Inc. v. Center Design, Inc.*, 206 W. Va. 311, 315, 524 S.E.2d 666, 670 (1999) (per curiam) (quoting Syl. pt. 3, *Bennett v. Dove*, 166 W. Va. 772, 277 S.E.2d 617).

*Dan's Carworld* at 483, 677 S.E.2d at 919. We find no ambiguity in the relevant portion of the arbitration agreement. Although the parties disagree as to the proper meaning to be afforded the phrase "any question," it has long been recognized that "a contract is not rendered ambiguous merely because the parties disagree as to its construction." *Perrine v. E.I. du Pont de Nemours & Co.*, 225 W. Va. 482, 508, 694 S.E.2d 815, 841 (2010). *See also* Syl. pt. 3, in part, *Energy Dev. Corp. v. Moss*, 214 W. Va. 577, 591 S.E.2d 135 (2003) ("The mere fact that parties do not agree to the construction of a contract does not render it ambiguous."); Syl. pt. 1, in part, *Berkeley Cty. Pub. Serv. Dist. v. Vitro Corp. of Am.*, 152 W. Va. 252, 162 S.E.2d 189 (1968) (same).

Lessors contend that the circuit court correctly read the phrase "any question" broadly to essentially mean any inquiry. Chevron, on the other hand, contends that the phrase should be afforded a narrow meaning akin to a conflict. We find it important to our resolution of this matter to note that, in ascertaining the meaning of this term as intended by the parties to the contract, we are obliged to consider the context in which it is used, *i.e.*, an arbitration agreement. *See Benson v. AJR, Inc.*, 215 W. Va. 324, 327, 599 S.E.2d 747, 750 (2004) (per curiam) (recognizing that "any term that has significance in a given contract[] must be

4

defined based on the subject matter of the contract and the intent of the document's drafters"). Considering the plain and ordinary meaning of the term "question" in the context of arbitration, which is a form of dispute resolution, we observe that its definition includes the concept of a dispute. *See* Webster's New World College Dictionary 1192 (5th ed. 2016) (providing definition of "question," that includes "something in controversy before a court" and "to dispute; challenge"); New Oxford American Dictionary 1431 (3d ed. 2010) (defining the term "question," in part, as "the raising of a doubt about or objection to something," and "a matter forming the basis of a problem requiring resolution"); Webster's Third New International Dictionary Unabridged 1863 (1970) (including within definition of "question" the terms "objection" and "dispute"). Thus, considering the phrase "any question" in the proper context of arbitration, it becomes clear that the phrase is intended to refer to an objection or dispute, and not a mere inquiry. Otherwise, nearly any action taken by a party to perform under the Lease would first require arbitration, regardless of whether there was a dispute among the parties. Such a result simply is unreasonable. "Generally, this Court will not interpret a contract in a manner that creates an absurd result." *Dunbar Fraternal Order of Police, Lodge No. 119 v. City of Dunbar*, 218 W. Va. 239, 244, 624 S.E.2d 586, 591 (2005) (per curiam). *See also Glen Falls Ins. Co. v. Smith*, 217 W. Va. 213, 221, 617 S.E.2d 760, 768 (2005) (recognizing that "[a] contract of insurance should never be interpreted to create an absurd result, but should instead receive a reasonable interpretation").

Accordingly, for the reasons explained above, we conclude that the circuit court erred in ruling that Chevron's conduct was sufficient to waive its right to compel arbitration. Instead, we find that, pursuant to the plain language of the arbitration agreement contained in the Lease, Chevron was under no obligation to seek arbitration before deducting certain costs from royalty payments. Thus, in so doing, Chevron did not act inconsistently with its right to now seek to arbitrate the resulting dispute over whether such deductions are authorized under the terms of the Lease.

Both parties additionally seek this Court's resolution of a second question, *i.e.*, whether the arbitration agreement is unconscionable.[3] Lessors argue that the arbitration

_____

[3]This issue, though raised below, was not expressly addressed by the circuit court. However, this Court previously has exercised its discretion to consider issues that are not technically proper before us when neither party objects, and the issue has been briefed by both parties. *See, e.g.*, *Texas E. Transmission, LP v. West Virginia Dep't of Envtl. Prot., Div. of Mining & Reclamation*, ___ W. Va. ___, ___ n.18, 807 S.E.2d 802, 810 n.18 (2017) ("Neither the order of the SMB nor the circuit court's order discusses W. Va. CSR § 38-2-3.32.a. However, insofar as the Rule has been briefed by both parties, and Marshall Coal has not objected to this issue, we will assume the Rule was raised below and will

(continued...)

provision is both procedurally and substantively unconscionable; Chevron contends that it is neither.

> A contract term is unenforceable if it is both procedurally and substantively unconscionable. However, both need not be present to the same degree. Courts should apply a "sliding scale" in making this determination: the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the clause is unenforceable, and vice versa.

Syl. pt. 9, *Brown v. Genesis Healthcare Corp.*, 229 W. Va. 382, 729 S.E.2d 217 (2012) (quotations and citation omitted) (hereinafter "*Brown II*"). Lessors argue that the arbitration agreement is substantively unconscionable due to its requirement of three arbitrators, which Lessors speculate would result in the cost of arbitration being $40,000.00 or more to resolve a dispute where the amount in controversy is only $2,266.00.[4] Lessors complain that "nothing in the provision prohibits Chevron from choosing [an arbitrator] from literally anywhere in the country, at whatever hourly rate that arbitrator may attempt to impose, perhaps with a hefty retainer." Chevron asserts that Lessors have failed to meet their burden of proving prohibitive arbitration costs or that the arbitration agreement is one-sided.

This Court has held that

> [s]ubstantive unconscionability involves unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party. The factors to be weighed in assessing substantive

---

[3](...continued) exercise our discretion to consider the same."); *Falls v. Union Drilling Inc.*, 223 W. Va. 68, 71 n.8, 672 S.E.2d 204, 207 n.8 (2008) (per curiam) ("Although this interlocutory matter is not, as a matter of procedure, technically proper before us as an appeal, because Appellees have not raised this issue, and have addressed the issues presented herein on their merits, we will, in our discretion, address this matter as an appeal that is properly before us."); Syl. pt. 3, *State v. Salmons*, 203 W. Va. 561, 509 S.E.2d 842 (1998) ("When a defendant assigns an error in a criminal case for the first time on direct appeal, the state does not object to the assignment of error and actually briefs the matter, and the record is adequately developed on the issue, this Court may, in its discretion, review the merits of the assignment of error.").

[4]Chevron contends that amount in dispute is significantly higher insofar as Lessors also seek a declaration that future deductions of costs from royalty payments may not be taken by Chevron.

6

unconscionability vary with the content of the agreement. Generally, courts should consider the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns.

Syl. pt. 12, *Brown II*, 229 W. Va. 382, 729 S.E.2d 217 (quotations and citation omitted). Lessors' complaint of oppressively high costs is merely speculative.[5] *See also Nationstar Mortg., LLC v. West*, 237 W. Va. 84, 93, 785 S.E.2d 634, 643 (2016) (rejecting speculative estimation of costs of arbitration as evidence of substantive unconscionability). Moreover, Lessors point to nothing in the arbitration agreement that is one-sided. In fact, the arbitration agreement expressly specifies that "[t]he cost of such arbitration will be borne *equally* by the parties." (Emphasis added). We find no persuasive evidence of substantive unconscionability.

Lessors additionally argue that the arbitration agreement is procedurally unconscionable. They base their argument on the fact that neither Grace Bonar nor John Robert Bonar, who originally executed the Lease agreement with TriEnergy, are sophisticated or experienced in negotiating contracts, though they concede that they successfully negotiated the inclusion in the Lease of the term prohibiting the deduction of certain costs. Moreover, they complain that TriEnergy made no effort to explain to them the nature of arbitration. Chevron argues that the Lessors have failed to establish procedural unconscionability. We agree.

Procedural unconscionability is concerned with inequities, improprieties, or unfairness in the bargaining process and formation of the contract. Procedural unconscionability involves a variety of inadequacies that results in the lack of a real and voluntary meeting of the minds of the parties, considering all the circumstances surrounding the transaction. These inadequacies include, but are not limited to, the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract.

---

[5]Lessors' estimation of the cost of arbitration is based upon the affidavit of a local lawyer regarding the cost of arbitrating a completely unrelated dispute involving an oil and gas lease. There is no indication in the affidavit that the disputed issues or the parties' financial obligations under the terms of the lease agreement bear any similarity to the case *sub judice*. We find this affidavit insufficient evidence of what the costs might be to arbitrate the instant matter.

Syl. pt. 17, *Brown I*, 228 W. Va. 646, 724 S.E.2d 250. In this case, Lessors have failed to establish procedural unconscionability. The arbitration agreement at issue is simple and straightforward, and Lessors have provided insufficient evidence of "inequities, improprieties, or unfairness in the bargaining process and formation of the contract." *Id.*

> The doctrine of unconscionability means that, because of an overall and gross imbalance, one-sidedness or lop-sidedness in a contract, a court may be justified in refusing to enforce the contract as written. The concept of unconscionability must be applied in a flexible manner, taking into consideration all of the facts and circumstances of a particular case.

Syl. pt. 4, *Brown II*, 229 W. Va. 382, 729 S.E.2d 217. Lessors have failed to establish the arbitration agreement in the Lease is unconscionable.

For the reasons set out herein, the December 11, 2016, order of the Circuit Court of Marshall County is reversed, and this case is remanded for entry of an order compelling arbitration.

Reversed and Remanded.

**ISSUED:** February 14, 2018

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Elizabeth D. Walker

**DISQUALIFIED:**

Justice Menis E. Ketchum