693 S.E.2d 70

**Dianna Brekke STORRIE, Petitioner Below, Appellant**

v.

**Christopher Michael SIMMONS, Respondent Below, Appellee**

and

**Charles D. Kittle, Petitioner Below, Appellee**

v.

**Susan R. Burke, Respondent Below, Appellant.**

**Nos. 35289, 35445.**

Supreme Court of Appeals of West Virginia.

Submitted March 2, 2010.

Decided April 2, 2010.

Cinda L. Scales, Esq., Martinsburg, WV, for Appellant Dianna Brekke Storrie.

Robert D. Aitcheson, Esq., Charles Town, WV, for Appellee Christopher Michael Simmons.

Elgine Heceta McArdle, Wheeling, WV, for Appellant Susan R. Burke.

Teresa Clark Toriseva, Wheeling, WV, for Appellee Charles D. Kittle.

David B. Cross, Wellsburg, WV, Guardian Ad Litem for Docket No. 35445.

1. The Court's "customary practice in cases involving minors is to refer to the parties' children by their initials rather than by their full names."

PER CURIAM:

In these consolidated actions, Appellants Dianna Brekke Storrie ("Storrie") and Susan R. Burke ("Burke") each appeal the denial of their respective petitions for modification of custody arrangements based on relocation under West Virginia Code § 48–9–403 (2009). Both Storrie and Burke filed motions seeking to relocate their children to other states, and in both actions the biological fathers of the children, Appellees Christopher Michael Simmons ("Simmons") and Charles D. Kittle ("Kittle") respectively, opposed the relocations. For the reasons set forth herein, in *Storrie v. Simmons*, the Court reverses the final Order of the Circuit Court of Berkeley County, West Virginia, and remands for entry of an order granting Storrie's Motion for Modification and establishing a new parenting plan. In *Kittle v. Burke*, the Court affirms the final Order of the Circuit Court of Ohio County, West Virginia, denying Burke's Petition for Modification, but remands the case for reconsideration of the parenting plan now in effect, to ensure that the terms of the plan are in accordance with the children's best interests.

## I.

### FACTS AND PROCEDURAL HISTORY

Because each of the two actions consolidated for the purposes of this appeal has a distinct set of facts, the factual and procedural history of each is addressed separately.

#### A. *Storrie v. Simmons*

Storrie and Simmons were married in 2000, and their union produced two sons, A.S., born in 2001, and J.S., born in 2003.[1] The couple divorced in July 2007 and Storrie was awarded primary custodial responsibility of the children. The custody agreement gave Simmons visitation with the children on Wednesday nights from 5 p.m. to 7 p.m. during the school year, as well as three weekends a month, every other week during the summer, and fifty percent of any school vacation time at holidays. Storrie was designated the "custodial parent" for state and

*Howell v. Goode*, 223 W.Va. 387, 388 n. 2, 674 S.E.2d 248, 249 n. 2 (2009).

federal law purposes, but each parent was permitted to claim one child on their taxes. They shared decision-making responsibility.

In 2007, Simmons moved from Berkeley County, West Virginia, where Storrie lives with the children, to Waynesboro, Pennsylvania, with his girlfriend, Anne Clark. Waynesboro is approximately forty-five minutes from Storrie's residence in Berkeley County, so Simmons continued to see the children at the regularly-scheduled times.

In July 2008, Storrie filed a Notice of Relocation and Motion to Modify the custody arrangement with the Family Court of Berkeley County, West Virginia. She had remarried in 2007 and her new husband, Robert Ricks, an active duty member of the U.S. Marines, had been reassigned to Camp Lejeune in North Carolina. Accordingly, Storrie sought the family court's permission to move with the two children to Topsail Island, North Carolina, which is next to Camp Lejeune. She submitted a proposed parenting plan in which the children would reside with her in North Carolina during the school year, but would spend half of their summer vacation, a week at Christmas, half of their Thanksgiving and spring breaks, as well as "any other times agreed on by parties," with their father. Notably, while not documented in the record on appeal, Storrie asserts in her appellate brief that, after submitting her original proposed parenting plan, she further agreed that, in addition to half of all holidays, the children could stay with

their father for eight weeks in the summer, as well as one weekend a month. She contends that she agreed to drive the children from North Carolina to West Virginia for those monthly visits. She further asserts that, under this proposed plan, Simmons would have essentially the same amount of time with the children as he does under the current parenting plan.[2] Simmons objected to Storrie's motion for modification.

Despite finding that Storrie had exercised the significant majority of custodial responsibility and that her proposed relocation was in good faith, for a legitimate purpose, and to a reasonable location in light of that purpose, the Family Court of Berkeley County, West Virginia, denied Storrie's Motion for Modification in a final Order issued on November 21, 2008. It noted that the relocation would significantly impair Simmons's ability to exercise his custodial time under the current parenting plan, and found that it is not practical to revise the parenting plan to accommodate the relocation and maintain the same proportion of time between the parents. After reviewing reports from Bernard Lewis, PhD, a clinical psychologist who interviewed the children, and Susan Lohman, a custody evaluator whom the court appointed to complete a custody investigation pursuant to West Virginia Code § 48–9–301 (2009),[3] the family court noted that the children were strongly bonded with their father, and found that the move would harm their relationship with him, as well as their relationship with

**2.** Without providing any documentation to support this assertion, Storrie contends that the newly proposed parenting plan would reduce Simmons' total parenting time by only two days.

**3.** Both Dr. Lewis and Ms. Lowman's reports indicated that the boys are well-adjusted, well-behaved children who are strongly bonded to both parents. No abuse or neglect is present in either home. The reports further indicate that both boys are also bonded with their step-father, Rick, and with their father's live-in girlfriend, Anne, and that they have a good relationship with their paternal grandmother, who also resides in Berkeley County, West Virginia.

Ms. Lowman's report indicated that each parent is capable and loving and that the boys wish to continue to live with their mother, but have frequent visits with their father. She therefore recommended that Storrie be permitted to relo-

cate the boys to North Carolina and that Simmons be granted visitation with the boys one weekend a month during the school year, as well as alternate holidays and all but two weeks of their summer vacation. Although Simmons requested the custody investigation, the family court split the cost of the evaluation between the parties, with Simmons paying $440.00 and Storrie paying $390.00.

Dr. Lewis's report, on the other hand, which was very favorable to Simmons, recommended that the relocation be denied, finding that the move would interfere with the boys' relationships with their father, their father's girlfriend and their paternal grandmother. In compiling his report, Dr. Lewis interviewed the boys, Simmons, his girlfriend, Anne, and Simmons's mother. Dr. Lewis did not interview Storrie or her husband or any of Storrie's family, however. Moreover, Dr. Lewis's report was requested and paid for by Simmons.

their paternal grandparents and their father's girlfriend. The family court ultimately concluded that the relocation was not in the children's best interest and, thus, denied the motion.

Storrie filed a Petition for Appeal of the family court's Order with the Circuit Court of Berkeley County, West Virginia. On January 23, 2009, the circuit court summarily denied, without a hearing, Storrie's petition. It is from this denial that Storrie appeals.

## B. *Kittle v. Burke*

Burke and Kittle divorced in October, 2002, and Burke was awarded primary custody of their two daughters, K.K., born in 1996, and H.K., born in 1999. Under the original parenting plan, Burke and Kittle shared decision making responsibility, Burke retained physical custody of the children, and Kittle was granted visitation "at such reasonable and convenient times as the parties may agree on." For federal and state statutory purposes, the custodial split was designated as seventy percent of time with mother, thirty percent with father.

Immediately following the divorce, Burke moved with the children from Martinsburg, West Virginia, where they had resided with Kittle, to Wheeling, West Virginia. Kittle remained in Martinsburg for several years. In October 2004, Burke remarried and subsequently had two sons with her new husband, Sean Burke. In the fall of 2005, Kittle moved to Wheeling with his new girlfriend, Erin Greenfield, in order to be closer to his daughters. In early 2006, with Kittle now living in the same town as the children, Kittle and Burke agreed to a new parenting plan, splitting custody of K.K. and H.K. evenly. The plan provided that, during the school year, the children would spend Mondays and Tuesdays with their mother, Wednesdays and Thursdays with their father, and alternate between the two parents on the weekends (Friday–Sunday). Summer break and holidays were split between the parents.

For child support purposes, Burke was allocated 183 overnights and Kittle 182 overnights.[4]

In October 2007, Burke filed a petition with the Family Court of Ohio County, West Virginia, seeking to modify the parenting plan to allow her to relocate with the girls to Irmo, South Carolina, where her husband had been offered a new job. Sean Burke, a computer programmer, had been recruited for a management position and offered a $13,000 a year pay increase, as well as a starting bonus. In filing her Petition for Modification, Burke proposed a new parenting plan in which Kittle would have custody of the children approximately 94 days a year. Specifically, she proposed that the girls reside with her in South Carolina during the school year, but visit their father one weekend a month during January, February and October. Additionally, she proposed that the children spend nine weeks with their father during the summer, as well as all spring breaks and alternating holidays.

Kittle opposed the Petition for Modification, and both parties made cross-claims of unfitness. Kittle alleged that Burke's new husband had engaged in several incidences of domestic violence, used drugs, and had harbored a fugitive at one time. Burke asserted that Kittle himself engaged in domestic violence when they were married and, while she admitted that her husband had used drugs in the past, she indicated that he had undergone treatment and was now clean. She further asserted that she had been the only source of stability in the children's lives, and argued that, while she is a stay-at-home mother, Kittle's work hours as a police officer are not conducive to being the primary custodian.

The family court appointed a guardian ad litem for the children. After an extensive three-day hearing, including over eighteen hours of testimony and an in camera interview with the children, the family court concluded that both parents are fit, and that both Burke's new husband and Kittle's live-in

---

4. A subsequent Order regarding a Motion to Modify child support issued by the Family Court in September 2007, actually credits Kittle with 191 overnights and Burke with 174 overnights. Kittle explains in his brief that Burke had the girls every second and fourth weekend of a month, while Kittle had the girls on the first, third, and when applicable, fifth weekends of every month. Thus Kittle actually exercised slightly more than fifty percent of the custodial responsibility under that parenting plan.

girlfriend are also appropriate care-givers for the children. The family court noted that, in its in camera interview, the children indicated close bonds with both parents and a desire to continue to split time evenly between the two.[5] The family court concluded that the proposed relocation was in good faith and for a legitimate purpose, however, it determined that the move was not to a "reasonable location" in light of (1) the substantial adverse impact it would have on Kittle's relationship with his children, (2) the substantial travel between households which would be necessary, plus the cost of that travel, (3) the adverse impact on the children's relationships with their extended family, and (4) the adverse impact on the continuity of the girls' schooling.

After denying the Petition for Modification, the family court indicated that, should Burke choose not to relocate in light of the court's ruling, the parenting plan then in effect would remain unchanged. In the event, however, that Burke would choose to relocate without her daughters, the family court ordered that the parenting plan proposed by Kittle in his response to Burke's petition be implemented.

Burke appealed the family court's ruling to the Circuit Court of Ohio County, West Virginia, which affirmed the decision. While that appeal was pending, Burke moved to South Carolina with her new husband and their two sons. As a result, the family court implemented Kittle's proposed parenting plan and, thus, the girls currently reside with Kittle and his girlfriend in Wheeling, West Virginia.

Burke now appeals from the April 8, 2009, final Order of the Circuit Court of Ohio County, West Virginia, affirming the family court's denial of her petition for modification.

## II.

## STANDARD OF REVIEW

■ Storrie asks this Court to review the decision by the Circuit Court of Berkeley County, West Virginia, refusing to review the family court's Order denying her Motion for Modification. Similarly, Burke seeks review of the final order of the Circuit Court of Ohio County, West Virginia, affirming the family court's denial of her Petition for Modification.

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law de novo.

Syllabus, *Carr v. Hancock*, 216 W.Va. 474, 475, 607 S.E.2d 803, 804 (2004).

## III.

## DISCUSSION

The two actions presented in this consolidated appeal both involve the interpretation and application of West Virginia Code § 48–9–403, which provides for modifications of parenting plans, when one parent seeks to relocate the children. Under that statute, when a parent who has been exercising some amount of custodial responsibility pursuant to a judicially-entered parenting plan decides to relocate, such parent must notify any other parent who has also been accorded custodial responsibility under the plan. *Id.* at § 48–9–403(b). The notice must provide the date, address and location of the proposed relocation, as well as a proposed modified parenting plan. *Id.* In the event that the relocation would significantly impair the other parent's ability to exercise his or her custodial responsibilities under the parenting plan, the relocation is considered a "change in circumstances" and the reviewing court must consider several factors in determining whether to permit the relocation of the child. *Id.* at § 48–9–403(a) & (c).

5. Citing the children's anxiety and hesitation to testify, the family court sealed the in camera testimony, and did not disclose whether either child had expressed a preference for living with one parent over the other. Because, at the time of the family court hearing, K.K. and H.K. were twelve and nine years old, respectively, they were not yet of the age at which the family court would have been required to accommodate their "firm and reasonable preferences," as required by West Virginia Code § 48–9–206(a)(2).

When the relocation would create a "change in circumstances," the statute directs courts to "if practical, revise the parenting plan so as to both accommodate the relocation and maintain the same proportion of custodial responsibility being exercised by each of the parents." *Id.* Accordingly, the statute contemplates that a parent seeking to relocate the children should be able to do so, as long as the "proportion" of custodial responsibility allocated between the parents can remain the same, and the revisions to the parenting plan are "practical." In making such revisions, a court may consider additional costs resulting from the relocation, and may allocate them between the parties in an equitable manner. *Id.*

In the event, however, that the relocation "renders it impractical to maintain the same proportion of custodial responsibility as that being exercised by each parent, the court shall modify the parenting plan in accordance with the child's best interests" and in accordance with several principles set forth thereafter. *Id.* at § 48–9–403(d). First, a court must determine which parent, if either, "has been exercising a significant majority of the custodial responsibility." *Id.* at § 48–9–403(d)(1)–(2). "The percentage of custodial responsibility that constitutes a significant majority of custodial responsibility is seventy percent or more." *Id.* at § 48–9–403(d)(1).

If one parent has been exercising a significant majority of custodial responsibility, that parent *"should be allowed to relocate with the child* so long as that parent shows that the relocation is in good faith for a legitimate purpose and to a location that is reasonable in light of the purpose." *Id.* (emphasis added). "A relocation is for a legitimate purpose if it is … to be with one's spouse who is established, or who is pursuing a significant employment or educational opportunity, in another location." *Id.* "A move with a legitimate purpose is reasonable unless its purpose is shown to be substantially achievable without moving or by moving to a location that is substantially less disruptive of the other parent's relationship to the child." *Id.*

Alternatively, if neither parent has been exercising a significant majority of custodial responsibility, but the proposed relocation is in good faith, for a legitimate purpose and to a location that is reasonable in light of that purpose, "the court shall reallocate custodial responsibility based on the best interest of the child, taking into account all relevant factors including the effects of the relocation on the child." *Id.* at § 48–9–403(d)(2).

In the event that the court concludes that the proposed relocation is not in good faith, for a legitimate purpose, or to a location that is reasonable in light of that purpose,

> the court may modify the parenting plan in accordance with the child's best interests and the effects of the relocation on the child. Among the modifications the court may consider is a reallocation of primary custodial responsibility, effective if and when the relocation occurs, but such a reallocation shall not be ordered if the relocating parent demonstrates that the child's best interests would be served by the relocation.

*Id.* at § 48–9–403(d)(3). Thus, where neither parent has been exercising a majority of custodial responsibility, or where the parent seeking to relocate is not doing so for a legitimate purpose, the court must modify the parenting plan according to the child's best interests.

In light of this statutory framework, the Court now turns to the specific facts of each of the instant actions to determine whether the respective courts below properly applied the provisions of West Virginia Code § 48–9–403.

### A. *Storrie v. Simmons*

In *Storrie v. Simmons,* Storrie, the mother seeking to relocate to North Carolina with her two sons, argues that the lower courts' Orders denying her Motion for Modification should be reversed on two alternative grounds. First, she contends that her proposed parenting plan allocates essentially the same proportion of days to Simmons that he is enjoying under the current parenting plan. Thus, she argues that, under West Virginia Code § 48–9–403(c), the family court was obligated to allow her to relocate to North Carolina with the children, because it was "practical" to modify the parenting plan to "both accommodate the relocation and main-

tain the same proportion of custodial responsibility being exercised by each of the parents." *Id.*

This argument, however, may be quickly dismissed. Although Storrie contends that she proposed a parenting plan that would continue to provide the "same proportion of custodial responsibility" to each parent, the record contains no documentation by which this Court can review that assertion. In fact, the proposed plan contained in the record does not allocate the same proportion of custodial responsibility to Simmons. Although Storrie may have orally modified her proposal by volunteering to drive the children to West Virginia once a month, no such modification is documented in the record and there are no transcripts of the family court hearing. Moreover, Simmons disputes Storrie's assertion that her proposed parenting plan would have allocated essentially the same proportion of custodial responsibility between the parents that currently exists. Consequently, this Court cannot find that the family court abused its discretion in holding that it was impractical to modify the parenting plan in a manner that continues to allocate the same proportion of custodial responsibility to each parent.

■ The Court, however, agrees with Storrie's second basis for reversal, specifically that the family court abused its discretion in denying her motion for modification under West Virginia Code § 48–9–403(d). As previously noted, the family court found that, prior to filing her motion, Storrie had been exercising a "significant majority," or at least seventy percent, of the custodial responsibility for the two children. Moreover, the family court concluded that Storrie's proposed relocation was made in good faith, for a legitimate purpose, and to a location that was reasonable in light of that purpose. Indeed, because relocating to join a spouse who is pursuing a significant employment opportunity is, by statute, for a "legitimate purpose," *see* W. Va.Code § 48–9–403(d)(1), and because Storrie is seeking to relocate close to Camp Lejeune, North Carolina, where her new husband has been stationed as a Marine, there can be no doubt that Storrie's relocation meets the statutory requirements in this

regard. *See id.* Nevertheless, the family court denied Storrie's motion.

In reaching its conclusion, the family court stated that, although Storrie met the statutory criteria under West Virginia Code § 48–9–403(d)(1), "the Court must ultimately look to the children's best interests." It then concluded that the relocation to North Carolina was not in the children's best interests because it would "necessarily and significantly impair the strong bond" between Simmons and the children, as well as impairing the children's relationships with their father's girlfriend and their grandparents. Simmons argues that the family court's decision was proper because this Court has repeatedly held that the children's best interests are the "polar star" by which all custody decisions should be made. *See, e.g., In re Ryan B.*, 224 W.Va. 461, 467, 686 S.E.2d 601, 607 (2009) ("As this Court has frequently emphasized, the best interest of the child is the polar star by which all matters affecting children must be guided.").

■ While the best interests of the children are always of fundamental importance in determining matters of custody and visitation, the family court in this action abused its discretion in its application of West Virginia Code § 48–9–403. As this Court has previously stated, "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. Pt. 7, *Dan's Carworld, LLC v. Serian*, 223 W.Va. 478, 677 S.E.2d 914 (2009). Indeed, where "the legislative intent is clearly expressed in the statute, this Court is not at liberty to construe the statutory provision, but is obligated to apply its plain language." *Id.* at 484, 677 S.E.2d at 920.

The Legislature has clearly expressed its intent in the statute at issue here. The statute specifically provides that, when a relocation would render it impractical to maintain the same proportion of custodial responsibility,

> the court *shall* modify the parenting plan in accordance with the child's best interests and in accordance with the following principles:

(1) A parent who has been exercising a significant majority of the custodial responsibility for the child *should* be allowed to relocate with the child so long as that parent shows that the relocation is in good faith for a legitimate purpose and to a location that is reasonable in light of the purpose.

W. Va.Code § 48–9–403(d) (emphasis added). Thus, the plain language of the statute clearly provides that, when the factors set forth in subsection (1) are met, the Court *should* allow the parent who has been exercising the significant majority of custodial responsibility to relocate with the children, and *shall* modify the parenting plan accordingly, in a manner that is in the children's best interests. *See id.*

Notably, this Court has previously admonished the lower courts for failing to adhere to the plain language of this statute. In *In re Visitation and Custody of Senturi N.S.V.*, 221 W.Va. 159, 652 S.E.2d 490 (2007), a mother of a child who had been exercising a substantial majority of the custodial responsibility decided to relocate to Texas in order to return to school and be near her family. *Id.* at 163, 652 S.E.2d at 494. The father objected and the family court allowed the father's cousins, who had acted as the child's caregivers, to intervene. *Id.* The family court ultimately denied the mother's petition for relocation, and ordered the mother to share custody of the child with the intervenors, finding that they were the child's "psychological co-parents." *Id.* The circuit court affirmed this decision. *Id.*

On appeal, this Court reversed, finding that the cousins had no standing to intervene, and that the family court had focused on the wrong issues when denying the mother's petition and re-allocating custody. *Id.* at 165, 652 S.E.2d at 496. The Court specifically found that the family court should have focused on "evaluating the legitimacy and reasonableness" of the contemplated relocation, as directed by the statute. *Id.* at 164, 652 S.E.2d at 495. While the facts of *Senturi* are significantly different from those presented here, in both cases, the family court ignored the clear statutory directive that permits a parent who has been exercising a substantial majority of custodial responsibility to relocate with the child when the move is legitimate and reasonable.

Accordingly, because the plain language of West Virginia Code § 48–9–403(d) directs that Storrie, as the parent exercising the primary custodial responsibility for her children, should be allowed to relocate with the children, the Court reverses the circuit court's decision, and remands for entry of an order granting Storrie's motion for modification and establishing a new parenting plan that is based on the best interests of the children in light of the relocation.

### B. *Kittle v. Burke*

■ The facts of *Kittle v. Burke* differ from those of *Storrie v. Simmons* in one very important respect. Burke, the mother seeking to relocate with her two daughters to South Carolina, had not been exercising a "significant majority" of the custodial responsibility when she filed her Petition for Modification. Indeed, Burke shared the custodial responsibility for her daughters with her ex-husband, Kittle. Consequently, the applicable statutory provision is West Virginia Code § 48–9–403(d)(2), which provides:

If a relocation of the parent is in good faith for legitimate purpose and to a location that is reasonable in light of the purpose and if neither has been exercising a significant majority of custodial responsibility for the child, *the court shall reallocate custodial responsibility based on the best interest of the child,* taking into account all relevant factors including the effects of the relocation on the child.

(Emphasis added.) The family court, therefore, had wide discretion to determine whether the girls' best interests would be served by allowing them to relocate with their mother or by reallocating primary custodial responsibility to their father.

■ Burke contends that the family court abused its discretion by basing its decision regarding the reasonableness of the location on facts not supported in the record and further that the family court improperly emphasized the effects of the relocation on Kittle's rights, rather than focusing on whether relocation was in the children's best inter-

ests.[6] While the family court's findings of fact regarding the reasonableness of the proposed location are confusing at best, it properly based its ultimate conclusion on the best interests of the children and, thus, the rulings below denying Burke's petition for modification are affirmed.

Pursuant to West Virginia Code § 48–9–403(d)(2), which applies when neither parent has been exercising a significant majority of custodial responsibility, the family court was first obligated to consider whether Burke's proposed relocation was made in good faith, for a legitimate purpose, and to a location that is reasonable in light of that purpose. *Id.* The family court clearly found, in its "conclusions of law," that Burke was acting in good faith and that the proposed relocation was for a legitimate purpose. It did not, however, specifically address whether the new location was reasonable. Instead, the family court concluded that

> *the relocation is not reasonable* in light of the substantial adverse impact it will have on the father's parent-child relationship, the effective stripping away of the bond between the father-daughter, the substantial travel between the parties' respective households, the adverse impact upon the children's relationship with extended family, and the adverse impact upon the continuity of the children's schooling.

(Emphasis added.)

During the hearing on the Petition for Modification, both parties presented evidence and testimony relating to the "reasonableness" of the new location. Burke's new husband, Sean Burke, testified that he had tried to find a management position in the Wheeling area, but had been unsuccessful. Simi-larly, a personnel recruiter who had approached Sean Burke about the new position, submitted an affidavit stating that no comparable job opportunities were available to Sean Burke in the Wheeling–Pittsburgh area. The guardian ad litem interviewed Sean Burke's prior employer and verified that no management positions were available to Sean Burke at that employer at that time. Kittle did not present any evidence to show that similar management positions would be available to Sean Burke at a closer location.

Despite this testimony, the family court stated in its findings of fact that, while no evidence had been presented to indicate that Sean Burke could have found a comparable job closer to Wheeling, Burke had failed to prove that no comparable jobs were available in other nearby locations such as Columbus, Ohio, Akron, Ohio, Cleveland, Ohio, or Cincinnati, Ohio, all of which are within two to four hours of Wheeling. Burke argues that, in so finding, the family court improperly substituted its own findings of fact for the uncontroverted evidence presented at the hearing, and then improperly concluded that her relocation was to an unreasonable location.

While the Court agrees with Burke that the evidence presented at the hearing indicated that the new location was, in fact, reasonable in light of the legitimate purpose, *see* W. Va.Code § 48–9–403(d)(2), it cannot find that the family court abused its discretion in denying the Petition for Modification. Pursuant to West Virginia Code § 48–9–403(d)(2), even if the family court had clearly found that the relocation was to a reasonable location, it would then be directed to "reallocate custodial responsibility based on the

---

**6.** Burke also argues that family court's ruling should be reversed because the guardian ad litem failed to advocate on behalf of the children, instead advocating for Kittle's interests. She argues that the guardian ad litem, in his testimony before the family court, improperly focused on the "fairness" of the move to Kittle, and that the guardian should have interviewed the children independently.

Whether or not the guardian properly performed his duties in this action, however, is not a basis upon which Burke can seek to overturn the lower court's decision. The family court properly appointed a guardian ad litem to provide "a full and independent investigation of the facts involved in the proceeding," and to make a recommendation to the court. *See* W. Va. Trial Court Rule 21.03. The family court was not obligated to follow the guardian ad litem's recommendation; rather, it was free to give whatever weight and credibility it chose to the guardian ad litem's report and testimony. That Burke may not have agreed with the guardian ad litem's testimony is irrelevant; this Court will only consider whether the family court's findings of fact were clearly erroneous, or whether it abused its discretion in the application of West Virginia Code § 48–9–403.

best interest of the child, taking into account all relevant factors including the effects of the relocation on the child." Here, the family court clearly considered the appropriate factors and based its ultimate decision on the best interests of the children. Accordingly, any error that may have occurred in the family court's findings of fact on whether the proposed location was reasonable is harmless. *See, e.g.,* Syl. Pt. 4, *Burns v. Goff,* 164 W.Va. 301, 262 S.E.2d 772 (1980) ("An error which is not prejudicial to the complaining party is harmless and does not require reversal of the final judgment.").

■ Burke additionally argues that the family court improperly focused on whether the relocation would be fair to Kittle, instead of focusing on the children's best interests. She contends that the family court should have focused on the factors contained in West Virginia Code § 48–9–102 (2009), which provide that a child's best interests are served by facilitating:

(1) Stability of the child;

(2) Parental planning and agreement about the child's custodial arrangements and upbringing;

(3) Continuity of existing parent-child attachments;

(4) Meaningful contact between a child and each parent;

(5) Caretaking relationships by adults who love the child, know how to provide for the child's needs, and who place a high priority on doing so;

(6) Security from exposure to physical or emotional harm; and

(7) Expeditious, predictable decision-making and avoidance of prolonged uncertainty respecting arrangements for the child's care and control.

*Id.* at § 48–9–102(a)(1)–(7). Contrary to Burke's assertions, however, the family court did consider the relevant factors under this statute. For example, it considered the first factor—the stability of the children—and found that their stability would be disrupted by the move, noting that both girls had been in the Ohio County school system for a number of years, and that relocation would inter-

rupt the continuity of their education. Moreover, the family court noted that Burke had failed to present any evidence indicating that the children would have access to better schools or other opportunities in South Carolina.

Similarly, in considering the third and fourth factors, the continuity of existing parent-child relationships and meaningful contact between a child and each parent, the family court correctly noted that the relocation would necessarily interfere with the children's relationships with one of their parents. Given that the girls had been spending over fifty percent of their time with their father, the family court did not err in noting the adverse impact that the relocation would have on that relationship. Finally, the family court also noted that relocation would separate the children from their extended families on both sides, a significant number of whom live in the Wheeling area, and with whom the children are close.

Thus, Burke has failed to present any basis on which this Court can find that the family court abused its discretion in denying the petition for modification. As the family court noted, this is a case in which both parents are fit and the children are strongly bonded to each of them. Under such circumstances, and because neither party had been exercising a significant majority of the custodial responsibility when the petition was filed, the family court had wide discretion in determining whether relocation was in the best interests of the children and, thus, this Court affirms the circuit court's decision in this action.

■ The Court remands the case, however, for reconsideration of the parenting plan that is currently in effect. When Burke moved to North Carolina, the family court summarily adopted the parenting plan proposed by Kittle in his response to Burke's Petition for Modification. The record reveals no indication that the family court considered whether Kittle's proposed plan actually reallocates custodial responsibility in a manner that is in the children's best interests, as required by West Virginia Code § 48–9–403(d)(2).

A parent's relocation, regardless of whether the children are relocating as well, will necessarily require modification of an existing parenting plan and will often result in significant changes to the division of custodial responsibility. West Virginia Code § 48-9-403(d) clearly provides that such modifications be in accordance with the children's best interests, a directive that courts should not take lightly. Relocation will inevitably result in the children losing time with one parent, and courts should take careful pains to minimize the amount of time lost, while ensuring that the new plan is practical and reasonable. Merely adopting one parent's proposed parenting plan will not necessarily result in a plan that is in the children's best interests.

 The strong policy of both the relocation statute and this Court's case law recognizes that children have a right to full relationships with both of their parents and, therefore, courts are required to enter parenting plans that promote and strengthen those relationships.[7] *See, e.g., John P.W., on Behalf of Adam and Derek W. v. Dawn D.O.,* 214 W.Va. 702, 709–10, 591 S.E.2d 260, 267–68 (2003) ("Children need the support, love, and encouragement of both parents when those parents are available, as any child psychologist will readily attest. The parent who has physical custody of children in a divorce setting has the best opportunity and indeed has an obligation as a parent who is supposed to be acting in the best interests of his child to encourage contact and foster visitation with the non-custodial parent, barring reasonable cause to believe that such visitation will put the child in jeopardy of harm. To act otherwise, is clearly to deny that child a critical part of his development and to deny the non-custodial parent her liberty interest in guiding the child to adulthood."). Moreover, this Court has previously recognized that, "[i]n considering visitation issues, the courts must also be mindful of facilitating the right of the non-custodial parent to a full and fair chance to continue to have a close relationship with his children." Syl. Pt. 9, *White*

*v. Williamson,* 192 W.Va. 683, 453 S.E.2d 666 (1994).

Under the parenting plan proposed by Kittle and adopted by the family court, Kittle has primary custody of the children, while Burke is entitled to parenting time on the second weekend of the month during January, February, and October, nine weeks during the summer, and the following holiday schedule: every other Easter, every other Thanksgiving, three days at Christmas, Mother's Day weekend, the Fourth of July, and five hours on her birthday. Burke is required to provide all transportation between West Virginia and South Carolina for this parenting time.

The parenting plan adopted by the family court places significant travel obligations on Burke while seeming to unnecessarily curtail the amount of parenting time allotted to her during certain school breaks. Of particular concern, Burke is expected to deliver the children to West Virginia for holidays, such as Father's Day, that fall during the time that she would otherwise have the children in South Carolina. In the absence of findings on the record to explain such a requirement, the Court cannot understand how requiring Burke and the children to travel nearly eight hours in both directions for one day of parenting time with their father is in the children's best interests.

Because the family court adopted Kittle's proposed parenting plan without considering whether the terms of the plan are in the children's best interests, and without considering the effect of the plan on Burke's ability to continue to have close relationships with her children, the Court remands the case for reconsideration of the parenting plan now in effect to ensure that is "in accordance with the child[ren]'s best interests." *See W. Va. Code* § 48-9-403(d).

## IV.

## CONCLUSION

### A. *Storrie v. Simmons*

For the reasons stated herein, the Court reverses the final Order of the Circuit Court

---

7. For obvious reasons, the promotion of such parent-child relationships is only appropriate in the absence of abuse and neglect.

of Berkeley County, West Virginia, entered on January 23, 2009, and remands the action with instructions to enter an order granting Storrie's Motion for Modification and modifying the parenting plan in accordance with the children's best interests in light of the relocation.

Reversed and Remanded with Instructions.

### B. *Kittle v. Burke*

The Court affirms the final Order of the Circuit Court of Ohio County, West Virginia, entered on April 8, 2009, denying Burke's Petition for Modification, but remands the action with instructions to reconsider the existing parenting plan to ensure that the terms of the plan are in accordance with the children's best interests.

Affirmed, in part, and Remanded with Instructions.