# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **The Child of Steven C. and Melissa D.**

**No. 18-0289** (Lewis County 07-D-63)

**FILED**

**September 13, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Guardian Ad Litem Cheryl E. LaNasa appeals the Circuit Court of Lewis County's March 5, 2018, order granting Melissa D.'s request to relocate with the child.[1] Melissa D. ("the mother"), by counsel Mike Kelly, filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in (1) reversing the family court's order denying the mother's request to relocate; (2) finding that the family court erroneously considered facts irrelevant to whether the mother's request to relocate was made in good faith, and (3) ordering that the child be allowed to relocate to South Carolina with the mother, terminating the mother's child support obligation, and reinstating the father's child support obligation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### Facts and Procedural Background

The mother and Steven C. ("the father") married and, during the course of their marriage, had one child together.[2] Ultimately, the parents divorced in October of 2007. Following the divorce, the mother was designated as the primary residential parent of the child and the father was given parenting time and ordered to pay child support. In May of 2013, the mother married

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]The father did not file a response on appeal.

1

Gary "Robbie" D., her current husband. The father also remarried. The parties resided in or around Weston, West Virginia.

On or about June 23, 2017, Robbie D., the sole provider for the mother and the child, learned that the 7-Eleven store that he managed would be closing at the end of that month. Nearly immediately, Robbie D. began to look for other employment by posting his resume to three online job boards, indicating his geographical preferences to be Weston, Clarksburg, Fairmont, Morgantown, and Charleston, West Virginia. Robbie D. also directly applied with numerous employers over the next few weeks.

Robbie D. received only one lead on his job search. He participated in two interviews with Murphy USA, "a 'big dog' in the convenience store industry" according to his testimony. On July 17, 2017, Robbie D. participated in an in-person interview, and subsequently, on July 25, 2017, Murphy USA verbally offered him a store manager position in Dillon, South Carolina.

That same day, the mother filed a notice of relocation pursuant to West Virginia Code § 48-9-403(b), stating that her current husband, Robbie D., had accepted other employment in South Carolina.[3] It is undisputed that, at that time, the mother exercised 75.07% of the custodial responsibility. The mother proposed that the father's regular parenting time could occur one weekend per month, that the father could have holiday time with the child during Thanksgiving and Christmas, and that the father could have parenting time with the child during the summer.

At some point thereafter, a position opened in Murphy USA's Myrtle Beach, South Carolina, location, and Murphy USA offered that position to Robbie D., which he accepted. Murphy USA then extended Robbie D. a written letter confirming the job offer on August 1, 2017, listing the location as Myrtle Beach, South Carolina. On August 3, 2017, the father filed a handwritten objection to the relocation and requested a hearing on the matter. The mother, Robbie D., and the child relocated to Myrtle Beach on August 12, 2017, and Robbie D. started his employment with Murphy USA on August 14, 2017.

The Family Court of Lewis County held an initial hearing in the matter in September of 2017, after which petitioner was appointed as the child's guardian ad litem. A final hearing on the mother's Notice of Relocation was held in October of 2017. After hearing evidence, the family court denied the mother's request to relocate. In making its findings, the family court determined that the mother's request to relocate was for a legitimate purpose. However, the family court noted that determining whether the mother's request was in good faith was a "harder call." In considering good faith, the family court looked to the dates surrounding Robbie D.'s offer and the mother's filing of the Notice of Relocation. Because the mother filed her notice on July 25, 2017, a few days before the August 1, 2017, written offer was extended, the

---

[3]Pursuant to West Virginia Code § 48-9-403(b), "a parent who has responsibility under a parenting plan who changes, or intends to change, residences for more than ninety days must give a minimum of sixty days' advance notice, or the most notice practicable under the circumstances, to any other parent with responsibility under the same parenting plan."

2

family court determined that the mother had made the decision to move to South Carolina before the written offer. The family court further determined that it "[did] not think that anyone would move over eight (8) hours away just two (2) weeks after losing a job as a manager of a convenience store. Comparable employment closer to Lewis County could have been investigated, but it was not." The family court noted that "he could have found something comparable, or – maybe not in that field, but it's not a – a specialized – it's not like he's a brain surgeon . . . . I would think that he could find a job with comparable salary at least in West Virginia, if not Pennsylvania or Maryland."

The family court ultimately found that the proposed move was not reasonable in light of the stated purpose and was not in good faith. The family court then reallocated the custodial responsibility by granting primary custody of the child to the father, finding that it was in the child's best interests.

The mother timely filed a motion for reconsideration with the family court, which was denied by order in December of 2017. The family court expounded on its decision, stating that the mother's failure to provide sixty days' notice as required by West Virginia Code § 48-9-403(b) further lent itself to the conclusion that her request was not made in good faith. The family court opined that the mother "had a home . . . in Weston, West Virginia, in which she could have continued to reside and to wait out the sixty day period." Further, the family court pointed to Robbie D.'s testimony that the family eventually hoped to move to Myrtle Beach and that it was their "six-year plan" to support its finding that the mother intended to move to South Carolina prior to receiving the employment offer from Murphy USA.

Later in December, the mother appealed the family court's denial of her request to relocate. The circuit court held a hearing on the matter on February 5, 2018, and later issued an order reversing the family court's order. The circuit court determined that the family court relied on three findings that were clearly erroneous. First, the family court found that "comparable employment closer to Lewis County could have been investigated, but was not." The circuit court found that the evidence clearly established that Robbie D. put in "more than a score" of applications throughout West Virginia and surrounding areas. However, he received no responses from any employers. Second, the family court erred in finding that Robbie D. only searched for jobs for two weeks before accepting employment with Murphy USA when the evidence suggested that he searched for approximately four weeks. The circuit court further noted that nothing in West Virginia Code § 48-9-403(d)(1) required that Robbie D. "reject the only offer he received and forego the likelihood of a $10,000 pay increase until he meets a minimum number of weeks searching for a job." Third, the circuit court found that the family court's reliance on the August 1, 2017, offer letter in finding that the mother intended to move to South Carolina all along was misplaced. The letter clearly stated that the letter was "to confirm our offer of employment." The circuit court explained that

> [c]learly Murphy [USA] would not 'confirm' an offer that had not yet been made, meaning that the offer was made some time prior to August 1. There is no evidence whatsoever in the record that the date on which the offer was made was other than July 25, the same day [the mother] filed her notice of relocation.

3

The circuit court emphasized that it was undisputed that the mother's request to relocate was "for a legitimate purpose" given that she was relocating to be with her husband, whose only offer of work required relocation to South Carolina. *See* W. Va. Code § 48-9-403(d)(1) (setting forth circumstances that constitute a legitimate purpose, which include joining a "spouse . . . who is pursuing a significant employment or educational opportunity, in another location"). However, the circuit court disagreed with the family court's determination that the requested relocation was not in good faith or to a reasonable location in light of the stated purpose. The circuit court reasoned that it was erroneous to expect the mother and Robbie D. to stay in the area and possibly pursue a different career, even at the cost of losing their home or second car. Although Robbie D. was not a "brain surgeon," the circuit court found nothing in the statute to indicate that one must explore a career change before a finding of good faith can be made. Nor did the statute require that the mother and Robbie D. turn down a definite job offer in order to continue searching for a comparable position closer to home.

While the circuit court rebuked the mother for moving the child to South Carolina before the matter of relocation had been resolved, it ultimately found that she met the criteria for relocating pursuant to West Virginia Code § 48-9-403(d)(1), and that her request to relocate was for a legitimate purpose, to a reasonable location, and made in good faith. It is from the March 5, 2018, order reversing the family court's order that petitioner appeals.

**Standard of Review**

Our standard of review of the circuit court's order is well settled:

> "In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*." Syllabus, *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

Syl. Pt. 1, *Storrie v. Simmons*, 225 W. Va. 317, 693 S.E.2d 70 (2010).

**Discussion**

I.

Petitioner argues that the circuit court erred in reversing the family court's order denying the mother's request to relocate. According to petitioner, the family court correctly found that the mother's request to relocate was not made in good faith or to a reasonable location. Petitioner alleges that, contrary to the circuit court's findings, the family court did not expressly determine that Robbie D. only spent two weeks searching for a job. Further, petitioner avers that the family court did not rely entirely on the August 1, 2018, offer letter in determining that the mother did not act in good faith when she filed her request to relocate on July 25, 2018. Rather, petitioner states that the family court relied on the fact that numerous offer dates were provided to support

its conclusion that the mother was simply attempting to move to South Carolina under any circumstances. Having reviewed the record, we find petitioner's argument to be unpersuasive.

We have previously explained that

[i]f one parent has been exercising a significant majority of custodial responsibility, that parent "*should be allowed to relocate with the child* so long as that parent shows that the relocation is in good faith for a legitimate purpose and to a location that is reasonable in light of the purpose." [W. Va. Code § 48-9-403(d)(1)] (emphasis added). "A relocation is for a legitimate purpose if it is . . . to be with one's spouse who is established, or who is pursuing a significant employment or educational opportunity, in another location." *Id.*

*Storrie*, 225 W. Va. at 323, 693 S.E.2d at 76. We recently clarified that

if a parent who is exercising a significant majority of the custodial responsibility for a child proves that a proposed relocation is in good faith for a legitimate purpose, the location of the proposed move will be presumed to be reasonable. To overcome this presumption, the opposing parent must prove that the purpose of the move is substantially achievable without moving or by moving to a location that is substantially less disruptive of the opposing parent's relationship to the child.

Syl. Pt. 3, in part, *Nicole L. v. Steven W.*, 241 W. Va. 466, 825 S.E.2d 794 (2019). Accordingly, because the evidence is uncontroverted that the mother's request to relocate was for a legitimate purpose, we first turn to whether the mother's request was made in good faith.

As noted above, petitioner argues that the family court properly determined that the mother's request to relocate was not made in good faith.[4] Specifically, the family court noted that it had

_____

[4]We first note that, in her report to the family court, petitioner stated that she "believes that Mother's notice appears to be in good faith" and recommended that the family court hold a hearing on the limited issue of whether the location was reasonable in light of the legitimate purpose. It is curious that petitioner now argues against her original statement without providing insight as to how she reached her current conclusion. Further, as part of her argument, petitioner also points out that the mother failed to comply with the notice requirements of West Virginia Code § 48-9-403(b), which require a relocating parent to provide a sixty-day notice or "the most notice practicable under the circumstances." While it is true that the mother did not provide the requisite sixty-day notice, this failure does not act as a bar to the mother's relocation. Rather, failure to comply with the notice requirement is simply a factor to be considered in determining good faith. The mother learned of the offer on July 25, 2017, and filed her notice the same day. Robbie D. began his employment on August 14, 2017. As such, it is likely that sixty days was not practicable under the circumstances. Indeed, petitioner conceded as much in her report to the

(continued . . .)

5

heard three (3) different dates regarding the offer of employment, and the written job offer was not given until August 1, 2017, but Mother filed her Notice of Relocation on July 25, 2017, evidencing that Mother had made the decision to move to South Carolina before the date of the written job offer. The [c]ourt does not think that anyone would move over eight (8) hours away just two (2) weeks after losing a job as a manager of a convenience store.

However, the circuit court correctly determined that the factual findings relied upon by the family court in determining lack of good faith were erroneous. Here, the mother testified that Robbie D. received an oral offer of employment on July 25, 2017, and the father corroborated that testimony by stating that the mother called him on that same date to inform him of the offer.[5] At that time, the mother filed her notice of relocation. Thereafter, on August 1, 2017, Murphy USA sent a confirmatory letter to Robbie D. We fail to see how these dates indicate that the mother lacked good faith in requesting to move. Robbie D. received an oral offer for employment, and the mother relied upon that offer in filing her notice. The fact that the formal offer was mailed a few days later does not undermine the oral offer, nor does it invalidate the mother's reliance upon the same.[6] Accordingly, we agree with the circuit court's findings that the

_____

family court, stating "the undersigned believes that Mother's notice was given as soon as practicable after learning that her current husband was offered (and accepted) his new employment." While the circuit court rebuked the mother for failing to stay in West Virginia with the child until the matter was resolved, it ultimately determined that this failure did not demonstrate that she had acted in bad faith. Lastly, to the extent petitioner argues that certain evidence demonstrated the mother's intent to move to South Carolina prior to receiving the written confirmation of employment, we note that testimony of the mother and Robbie D.'s "six-year plan" to move to Myrtle Beach after the child reached the age of majority hardly demonstrates that they were actively seeking to move to that area prior to receiving the written offer. Accordingly, we find this aspect of petitioner's argument to be without merit.

[5]While petitioner's report to the family court indicated that Robbie D. informed her he received the oral offer on July 22, 2017, we fail to see how a three-day discrepancy impacted the fact that he did, in fact, receive an oral offer prior to, or on the same day as, the mother's filing of a request to relocate.

[6]Petitioner seems to suggest that Robbie D.'s positon was not even advertised until July 29, 2017. This suggestion is a misrepresentation of the evidence. The document to which petitioner cites clearly shows that Robbie D. interviewed for the Dillon, South Carolina location on July 17, 2017. At some point between July 17, 2017, and July 29, 2017, a position at the Myrtle Beach location became available and Robbie D. was offered that location, after he had orally been offered the position at the Dillon location. To the extent that petitioner attempts to argue that the mother filed her relocation notice on July 25, 2017, and Robbie D. did not apply to Murphy USA until July 29, 2017, we find that the record does not support such an assertion and further find the suggestion that Robbie D. somehow applied for the positon sometime on or after

(continued . . .)

6

family court erred in finding the mother lacked good faith simply because she filed her notice of relocation prior to receiving the formal offer letter.

We also find no basis for the family court's conclusion that the mother lacked good faith in requesting to relocate only a few weeks following the loss of Robbie D.'s job. While the family court did "not think that anyone would move over eight (8) hours away just two (2) weeks after losing a job as a manager of a convenience store," the unrebutted evidence ignored by the family court is that Robbie D. posted his resume to an online job board, listed several locations in West Virginia as his preferred geographic area, and also applied to several openings in the Weston area. However, Robbie D. had no success in finding employment and testified that he had to consider "a house payment, two (2) car payments. . . . I mean, you can't live on a negative amount. . . . I was offered zero (0) jobs here." In reversing the family court's order, the circuit court correctly noted that there is no "requirement that a party's family go through a period of economic hardship or uncertainty before relocation will be allowed or that requires a party's spouse to turn down a real and existing significant employment opportunity and 'just wait around' to see if anything develops." The record clearly establishes that Robbie D. applied for numerous jobs in West Virginia over approximately four weeks, but had no success in obtaining employment. He was subsequently offered a job in South Carolina, which had the potential to pay $10,000 more than his prior employment in West Virginia. Robbie D. and the mother had to consider how they were going to pay for their home mortgage and two car loans. Contrary to the family court's statements, the fact that the father's child support might have covered the cost of the mortgage and the family's second car was not "needed" because the mother lived in town did not demonstrate that their request to relocate was not made in good faith. Given these facts, we agree with the circuit court's findings that the family court erred in determining that Robbie D.'s acceptance of employment in South Carolina four weeks after losing his job demonstrates that the mother lacked of good faith in requesting to relocate. Accordingly, we find that the family court clearly erred in determining that the mother's request to relocate was not made in good faith.

Having established that the mother's request to relocate was for a legitimate purpose and made in good faith, we note that "the location of the proposed move will be presumed to be reasonable." *Nicole L.*, 241 W. Va. at --, 825 S.E.2d at 795, syl. pt. 3, in part. Here, petitioner fails to prove that "the purpose of the move is substantially achievable without moving or by moving to a location that is substantially less disruptive of the opposing parent's relationship to the child." *Id.* The record demonstrates that Robbie D. received only one offer in the month following his learning that his store was closing. Petitioner is unable to demonstrate that, had the mother and Robbie D. simply waited longer, they would have received a comparable offer in their hometown or somewhere substantially less disruptive. Interestingly, the father did not appeal the circuit court's order in an effort to ensure his child remained with him, and petitioner fails to argue how this relocation was not in the child's best interest, apart from a blanket statement that the family court properly reallocated custodial responsibility after denying the

July 29, 2017, participated in three interviews, and was offered the job by August 1, 2017, to be incredible.

mother's request to relocate. Accordingly, we find that petitioner has failed to overcome this presumption and further find that, given the mother's request to relocate was for a legitimate purpose and made in good faith, the proposed location was reasonable in light of that purpose.

## II.

Petitioner next argues that the circuit court erred in finding that the "undisputed facts" deemed crucial by the family court in making its decision were ultimately more relevant to the issue of custodial responsibility than to whether the proposed relocation was made in good faith. Petitioner avers that the circuit court has confused what the family court relied upon in determining whether the relocation was in the child's best interests with what it relied upon in determining whether the request to relocate was made in good faith. In its order denying the mother's motion for reconsideration, the family court noted as follows:

> In light of all of the above, the [c]ourt properly denied the relocation and per WV Code §48-9-403(d)(3) did an analysis of the best interests of the child to determine how to properly modify the parties' parenting plan. In determining what would be in the child's best interests, the following undisputed facts were crucial to the [c]ourt's ultimate decision . . . .

Thereafter, the family court listed several issues with the mother's credibility. Yet, in reversing the family court's order, the circuit court noted that these undisputed facts were more relevant to the issue of custodial responsibility than to whether the move was made in good faith. As such, petitioner avers that the family court clearly demonstrated that these issues were used to determine custodial allocation pursuant to the child's best interests and not whether the request to relocate was made in good faith and that the circuit court erred in its findings to the contrary.

However, petitioner fails to state what prejudice the child suffered as a result of this finding. Even if the circuit court had misinterpreted the family court's statements, the circuit court also determined that the family court relied on other clearly erroneous findings to make its decision that the mother's request was made in bad faith, as discussed above. Therefore, we conclude that there was no error in the circuit court's reversal of the family court's order based upon this ground.

## III.

Lastly, petitioner argues that the circuit court erred in ordering that the child be transferred back to the mother's custody, terminating the mother's child support obligation, and reinstating the father's child support obligation. According to petitioner, the family court properly determined that the mother's request to relocate was not made in good faith or to a reasonable location. Therefore, the circuit court erred in reversing the family court's order. We disagree.

Petitioner failed to cite to any law or authority to support this argument. *See* Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure ("The brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review

8

applicable, and citing the authorities relied on . . . .”). Further, we again note that petitioner did not definitively set forth a position on the child's best interests in her report to the family court below, nor does she specifically argue on appeal that relocation is not in the child's best interests. Rather, petitioner seemingly adopts the family court's findings without demonstrating her considerations or thought processes, simply stating “the Family Court properly modified the parenting plan in accordance with the [child's] best interests.”

Nevertheless, we note that the family court improperly modified the parenting plan upon erroneous findings. As demonstrated above, the family court erroneously determined that the mother's request to relocate did not meet the criteria set forth in West Virginia Code § 48-9-403(d). The family court concluded, and petitioner concurs, that it “properly denied the relocation and per WV Code §48-9-403(d)(3) did an analysis of the best interests of the child to determine how to properly modify the parties' parenting plan.” However, upon establishing that a parent is entitled to relocate pursuant to West Virginia Code § 48-9-403(d), courts must determine the child's best interests *in light of* that relocation. *See Storrie*, 225 W. Va. at 325, 693 S.E.2d at 78 (“Accordingly, because the plain language of West Virginia Code § 48-9-403(d) directs that Storrie, as the parent exercising the primary custodial responsibility for her children, should be allowed to relocate with the children, the Court reverses the circuit court's decision, and remands for entry of an order granting Storrie's motion for modification and establishing a new parenting plan that is based on the best interests of the children in light of the relocation.”). Therefore, the family court's reallocation of custodial responsibility was in error as it did not consider the child's best interests in light of that relocation. As such, the circuit court ordered that the child be returned to the mother's care and permitted to relocate to South Carolina. Additionally, the circuit court ordered the parties to negotiate a new parenting plan that approximated the former parenting plan to ensure that the father's former parenting time of ninety-one overnight visits was maintained. Accordingly, we find no error in the circuit court's decision to reinstate the former parenting plan given that the mother demonstrated that she met the criteria for relocation pursuant to West Virginia Code § 48-9-403(d).

## Conclusion

For the foregoing reasons, we affirm the circuit court's March 5, 2018, order reversing the family court's order denying the mother's request to relocate.

Affirmed.

**ISSUED**: September 13, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison